## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

**TAIWAN WALLACE *et al.*, each individually
and on behalf of all others similarly situated**                    **PLAINTIFFS**

**v.**                         **Case No. 4:22-cv-00337-KGB**

**EVERGREEN PACKAGING, LLC**                                  **DEFENDANT**

## ORDER

Before the Court is plaintiffs Taiwan Wallace, Roger Davis, Michael Sturdivant, Glen Floyd, Emily Colson, Broderick Burnett, and Bridgette Tate's motion for conditional certification, for approval and distribution of notice, and for disclosure of contact information ("motion to certify") (Dkt. No. 18). Defendant Evergreen Packaging LLC ("Evergreen") responded to the motion (Dkt. No. 55), and plaintiffs replied (Dkt. No. 56). For the following reasons, the Court grants in part and denies in part plaintiffs' motion to certify (Dkt. No. 18).

### I.      Background

Plaintiffs brings this proposed collective action against Evergreen alleging wage violations under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Arkansas Minimum Wage Act ("AMWA"), Ark. Code Ann. § 11-4-201, *et seq*. (Dkt. No. 1, ¶ 1).

With the exception of Glen Floyd, plaintiffs are residents and domiciliaries of Jefferson County, Arkansas (*Id.*, ¶¶ 9–15). Mr. Floyd resides and is domiciled in Grant County, Arkansas (*Id.*, ¶ 12). Plaintiffs represent that Evergreen "is a foreign limited liability company registered to do business in Arkansas" (*Id.*, ¶ 16). Plaintiffs allege that Evergreen "owns and operates a paper mill in Jefferson County" and "[w]ithin the two years preceding the filing of this Complaint . . . has continuously employed at least four employees" (*Id.*, ¶¶ 20–21). Plaintiffs worked as Hourly-Paid Production Workers for Evergreen and were classified as "hourly employees, nonexempt

from the overtime requirements of the FLSA" (*Id.*, ¶¶ 26, 29).  According to plaintiffs, Evergreen "directly hired Plaintiffs and other production workers to work on its behalf, paid them wages and benefits, controlled their work schedules, duties, protocols, applications, assignments and employment conditions, and kept at least some records regarding their employment" (*Id.*, ¶ 30).

Plaintiffs represent that they "and other production workers were scheduled to work eight hours per day, but they were regularly required to work more hours than they were scheduled to wait for the next person to show up for their shift." (*Id.*, ¶ 31).  "Plaintiffs and other production workers recorded their hours worked via an electronic timekeeping system, which logged their hours into an electronic payroll system maintained by" Evergreen (*Id.*, ¶ 32).  Plaintiffs maintain that "rounded hours worked by Plaintiffs and other production workers' hours in Defendant's favor by rounding down in approximately fifteen-minute increments" (*Id.*, ¶ 33).  Plaintiffs provide the Court the following example:  "if a production worker clocked in for 8 hours and 10 minutes, [Evergreen] would round that worker's hours down to exactly 8 hours" (*Id.*, ¶ 34).  Plaintiffs report that this "rounding practice resulted in hours worked by production workers which went unrecorded and uncompensated" (*Id.*, ¶ 35).  Plaintiffs then argue that because of the rounding practice, they were left uncompensated for time they worked over forty-hours per week (*Id.*, ¶ 36).

## II.    Governing Law

Under the FLSA:

An action to recover the liability prescribed . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

District courts in the Eighth Circuit, including this one, utilize a two-step approach to determine whether certification of a collective action is appropriate.  *See*, *e.g.*, *McChesney v. Holtger Bros.*, Case No. 4:17-CV-824-KGB, 2019 WL 118408, at *2 (E.D. Ark. Jan. 7, 2019); *Cruthis v. Vision's*, Case No. 4:12-CV-244-KGB, 2013 WL 4028523, at *1 (E.D. Ark. Aug. 7, 2013); *Watson v. Surf-Frac Wellhead Equip. Co.*, No. 4:11-CV-843-KGB, 2012 WL 5185869, at *1 (E.D. Ark. Oct. 18, 2012).  Under this approach, a district court first determines whether the putative collective action members are similarly situated (*i.e.*, whether they were subject to a common employment policy or plan), and then, at the conclusion of discovery, the district court provides an opportunity for the defendant to move to decertify the collective action, pointing to a more developed record to support its contention that the opt-in plaintiffs are not, in fact, similarly situated to the named plaintiffs.  *See Smith v. Frac Tech Servs., Ltd.*, Case No. 4:09-CV-679-JLH, 2009 WL 4251017, at *1 (E.D. Ark. Nov. 24, 2009).

"To establish that conditional certification is appropriate, the plaintiffs must provide 'some factual basis from which the court can determine if similarly situated potential plaintiffs exist.'" *Robinson v. Tyson Foods, Inc.*, 254 F.R.D. 97, 99 (S.D. Iowa 2008) (quoting *Dietrich v. Liberty Square, L.L.C.*, 230 F.R.D. 574, 577 (N.D. Iowa 2005)).  Plaintiffs' burden at the "notice" stage is "lenient" and "requires only a modest factual showing; it does not require the plaintiff[s] and the potential class members to show that they are identically situated." *Resendiz-Ramirez v. P & H Forestry, LLC*, 515 F. Supp. 2d 937, 941 (W.D. Ark. 2007) (citing *Kautsch v. Premier Commc'ns*, 504 F. Supp. 2d 685, 689–90 (W.D. Mo. 2007)).  Still, "'more than mere allegations' are required" for plaintiffs to carry their burden. *Tegtmeier v. PJ Iowa, L.C.*, 208 F. Supp. 3d 1012, 1019 (S.D. Iowa 2016) (quoting *Robinson*, 254 F.R.D. at 99).

"Typically, district courts will make the determination of whether to conditionally certify a class based solely on the affidavits presented by the plaintiffs." *Huang v. Gateway Hotel Holdings*, 248 F.R.D. 225, 227 (E.D. Mo. 2008) (citing *Rappaport v. Embarq Mgmt. Co.*, Case No. 607CV468ORL19DAB, 2007 WL 4482581, at *4 (M.D. Fla. Dec. 18, 2007)).  Factors to be considered include:  (1) whether plaintiffs all held the same job titles; (2) whether plaintiffs worked in different geographical locations; (3) the extent to which the claimed wage-and-hour violations occurred during different time periods and by different decision makers; and (4) whether plaintiffs all alleged similar, though not identical, wage-and-hour violations.  *See McChesney*, 2019 WL 118408, at *2 (citing *Stone v. First Union Corp.*, 203 F.R.D. 532, 542 (S.D. Fla. 2001)).  "The Court does not need to determine whether class members are actually similarly situated until the 'merits stage' of the litigation, when defendants typically move to decertify the class." *Tinsley v. Covenant Care Servs., LLC*, Case No. 1:14-CV--00026 ACL, 2015 WL 1433988, at *1 (E.D. Mo. Mar. 27, 2015) (citing *Littlefield v. Dealer Warranty Servs., LLC*, 679 F. Supp. 2d 1014, 1017 (E.D. Mo. 2010)).  At this stage, the district court also does not "make any credibility determinations or findings of fact with respect to contrary evidence presented by the parties." *Israsena v. Chalak M&M AR1 LLC*, Case No. 4:15-CV--00038-JLH, 2015 WL 13648567, at *2 (E.D. Ark. Oct. 14, 2015) (quoting *Chin v. Tile Shop, LLC*, 57 F. Supp. 3d 1075, 1083 (D. Minn. 2014)).

### III.    Discussion

#### A.    FLSA Conditional Certification

Since filing their motion to certify, plaintiffs made a supplemental filing ("plaintiffs' supplemental response") in response to Evergreen's motion for leave to file supplemental response in opposition to plaintiffs' motion for conditional certification ("Evergreen's supplemental

response") (Dkt. Nos. 61–62). Plaintiffs' supplemental response clarifies that their motion to certify seeks only conditional certification of Evergreen's Hourly-Paid Production Workers in Arkansas, not the entire United States, since "April 12, 2019" (Dkt. No. 62, at 3).[1] The Court, in considering the motion to certify considers the representations made in plaintiffs' supplemental response to be a valid clarification on the motion to certify and proceeds to determine if certification of the proposed class is warranted at this stage of the litigation (Dkt. Nos. 18; 62).

Plaintiffs assert that they worked in various roles in Evergreen's Jefferson County Facility (Dkt. Nos. 18-7; 18-8; 18-9; 18-10; 18-11; 18-12; 18-13; 18-14). These positions include Process Specialist, Service Operator, Operator, Service Operator III, Baler Operator, and Crane Operator (Dkt. Nos. 18-7; 18-8; 18-9; 18-10; 18-11; 18-12; 18-13; 18-14). Plaintiffs refer to their positions as "Hourly-Paid Production Workers" (Dkt. No. 18, at 1). Plaintiffs represent that their "primary duties included operating machines and other equipment and other duties related to producing paper at [Evergreen's] mill" (Dkt. No. 19, at 8). Plaintiffs also allege that while they were scheduled to work eight hours per day, they regularly worked more and had their payable time rounded down in favor of Evergreen (Dkt. No. 1, ¶¶ 31–36).

Evergreen objects to certification (Dkt. No. 55). As a preliminary matter, as plaintiffs have clarified that they do not seek nationwide certification, the Court does not consider Evergreen's arguments based on nationwide certification. The Court does consider Evergreen's objections related to its Arkansas operations. Evergreen maintains that plaintiffs "are not victims of a single decision, policy, or plan requiring off-the-clock work" (Dkt. No. 55, at 14–29). Evergreen argues:

---

[1] In reviewing the instant motion for class certification, the Court acknowledges the issues raised in Evergreen's supplemental response (Dkt. No. 61). Should Evergreen wish to file for decertification based on the representations made in Evergreen's proposed supplemental response, it may do so at a later point in this litigation.

(1) "plaintiffs have not identified any *de facto*, unlawful policy common to all members of the proposed collective," (2) plaintiffs fail to establish that they are even "similarly situated," and (3) "individualized defenses will dominate any liability determination" (*Id.*). Plaintiffs disagree, pointing to their declarations, as "fact-based" evidence that they are members of a similarly situated class (Dkt. No. 56, at 2–8).

Having carefully reviewed the motion and related filings, the applicable legal authorities, and the entire record in this matter, the Court finds that plaintiffs' declarations show that all members of the proposed collective were subject to a common policy or plan: Evergreen's alleged failure to pay overtime premiums for all hours worked over 40 in a single workweek. On this basis, the Court finds that plaintiffs have carried their lenient burden of establishing that they are similarly situated to other Hourly-Paid Production Workers.

Accordingly, the Court conditionally certifies this action as a collective action pursuant to § 216(b) of the FLSA for the purpose of facilitating notice to current and former Hourly-Paid Production Workers who meet the class definition.

### B. Notice

Plaintiffs request that the Court ratify the following notice process as it pertains to potential opt-in plaintiffs: plaintiffs would send notice and consent to join forms to potential opt-in plaintiffs *via* U.S. Mail and email (Dkt. Nos. 18-1; 18-2; 18-3; 18-4), and the Court would set a 90-day opt-in period (Dkt. No. 18, ¶ 9). Plaintiffs would also distribute a follow-up reminder notice *via* U.S. Mail or email to potential opt-in plaintiffs who do not respond within 30 days of sending notice (Dkt. Nos. 18-5). Finally, plaintiffs ask that the Court direct Evergreen to provide the names and last known telephone numbers, mailing addresses, and email addresses of potential opt-in plaintiffs

in an electronically malleable format, such as Excel, no later than seven days after the entry of this

Order (Dkt. No. 18, ¶ 9).

Evergreen argues that the proposed notice process is too broad, must be revised, and should

be disseminated by a third-party administrator by regular mail only.  Evergreen also asks that the

Court deny the request for putative class members' personal information and shrink the opt-in

period to 60 days (Dkt. No. 55, at 24–29).  Plaintiffs reply, stating that their notice should proceed

as written because Evergreen makes no reasonable objection (Dkt. No. 56, at 12).  Plaintiffs argue

that its notice "essentially copies the *de facto* standard in this district" (*Id.*).  The Court addresses

Evergreen's concerns below.

Evergreen argues that "the scope of the putative class should be limited, at most, to the

Company's Pine Bluff Paper Mill" and requests that the limitations period be shrunk to "three

years prior to the date the Court rules on Plaintiffs' Motion" (Dkt. No. 55, at 24).  Plaintiffs

supplemental response indicates that plaintiffs wish to confine their class to those who worked for

Evergreen in Arkansas (Dkt. No. 62, at 2).  Given plaintiffs' supplemental response, at this stage

in the litigation, the Court declines to limit the putative class any further.

Moreover, "because equitable tolling issues often arise for prospective plaintiffs, courts

frequently permit notice to be keyed to the three-year period prior to the filing of the complaint,

with the understanding that challenges to the timeliness of individual plaintiffs' actions will be

entertained at a later date."  *Cruthis*, 2013 WL 4028523, at \*6 (quoting *Winfield v. Citibank, N.A.*,

843 F.Supp.2d 397, 410 (S.D.N.Y. 2012)); *see, e.g., Roco v. Star One Staffing Int'l, Inc.,* Case No.

4:10-cv-00030–DPM (E.D. Ark. Nov. 15, 2010) (measuring notice period from date complaint

was filed and reserving ruling on equitable tolling); *Whitehorn v. Wolfgang's Steakhouse,* 767 F.

Supp. 2d 445 (S.D.N.Y. 2011) (declining to rule on equitable tolling issue at notice stage).  At this

stage of the litigation, the Court will direct that notice be provided to potential opt-in members of

the collective based on dates suggested by plaintiffs, reserving for determination later in the

litigation issues regarding equitable tolling and the applicable statute of limitations for all claims.

The Court next moves to Evergreen's remaining requests:  (1) that the notices must be

revised, (3) that the notices should be disseminated only through regular mail through a third-party

administrator, (3) that the Court deny the request that Evergreen turn over the putative class

members personal information, and (4) that the Court shrink the opt-in service period to 60 days.

(Dkt. No. 55, at 24–29).  The Court has reviewed all proposed written and electronic notice and

consent forms submitted by plaintiffs, in addition to the follow-up postcard and notes that it has

previously approved similar notice procedures (Dkt. Nos. 18-1, 18-2, 18-3, 18-4; 18-5).  *See e.g.,*

*Norvell v. Dedman's Sanitation*, Case. No. 3:21-cv-00233 KGB (E.D. Ark. Aug. 29, 2022).  For

this reason, outside of the modifications the Court lists below, the Court declines Evergreen's

request to modify the proposed notice or the process by which the notices are distributed.

Plaintiffs' proposed written notice, consent, and follow-up postcard are acceptable (Dkt. Nos. 18-

1, 18-2, 18-5), as is the proposed e-mail notice and consent (Dkt. Nos. 18-3, 18-4), provided

plaintiffs (1) alter the proposed form to indicate that the proposed class only applies to those who

worked at Evergreen's Arkansas operations and (2) remove the "information-only option" in the

Notice and any mention of the "information-only option" from any packet sent to putative

collective members.

Furthermore, the Court grants in part and denies in part plaintiffs' motion as it pertains to

notice to potential opt-in plaintiffs (Dkt. No. 18).  The Court grants plaintiffs' motion to the extent

plaintiffs seek to provide potential opt-in plaintiffs with notice through U.S. Mail and e-mail.

Accordingly, plaintiffs may send one written notice and consent form to the potential opt-in

plaintiffs through U.S. Mail and email. Plaintiffs are permitted to send each potential opt-in plaintiff one reminder notice of the action 30 days after sending the initial notice, either through U.S. mail or email but not through both.

To facilitate notice, Evergreen is ordered to provide plaintiffs' counsel the names, including any aliases or alternative names, last known mailing addresses, and all known e-mail addresses, including personal and company-sponsored, for all Direct Support Professionals employed by defendants at any time since April 12, 2019, within seven days from the entry of this Order. The Court further directs Evergreen to provide such information to plaintiffs' counsel *via* Microsoft Word or Excel formatting. After receiving such information, plaintiffs shall have 90 days to distribute notice and file opt-in consent forms with the Court.

### IV.    Conclusion

For the foregoing reasons, the Court grants in part and denies in part plaintiffs' motion for conditional certification, for approval and distribution of notice, and for disclosure of contact information (Dkt. No. 18). Additionally, the Court denies as moot Evergreen's motion for leave to file supplemental response in opposition to plaintiffs' motion for conditional certification (Dkt. No. 61).

It is so ordered this 31st day of March, 2023.

*Kristine G. Baker*

Kristine G. Baker
United States District Judge

9