**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **ELANDER WOODALL, Individually and on Behalf of All Others Similarly Situated** | |
| Plaintiff, | |
| v. | Case No.  1:23-CV-459 |
| **EVERGREEN PACKAGING, LLC AND PACTIV EVERGREEN, INC.,** | Honorable Harry D. Leinenweber |
| Defendants. | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S**
**MOTION FOR CONDITIONAL CERTIFICATION**

Dated: December 22, 2023

/s/ *John A. Ybarra*
_____
By Their Attorneys

John A. Ybarra, Bar No. 6196983
jybarra@littler.com
Shanthi V. Gaur, Bar No. 6224996
sgaur@littler.com
Matthew J. Ruza, Bar No. 6321424
mruza@littler.com
LITTLER MENDELSON, P.C.
321 North Clark Street
Suite 1100
Chicago, IL  60654
Telephone:     312.372.5520

## TABLE OF CONTENTS

**PAGE**

I.    SUMMARY OF OPPOSITION ..................................................................... 1

II.   FACTUAL BACKGROUND .......................................................................... 4

    A.    Overview of Pactiv Evergreen, Inc. ................................................. 4

    B.    Timekeeping Practices Throughout Pactiv Evergreen ........................... 5

III.   ARGUMENTS & AUTHORITIES ................................................................. 9

    A.    Plaintiff Bears the Burden of Presenting Sufficient Evidence To Support
          Conditional Certification. ................................................................ 9

    B.    Plaintiff and Putative Collective Members Were Not Subject to a Common
          Policy or Plan That Violated the FLSA .......................................... 10

          1.    The FLSA Permits The Overarching Practice of Neutral Windows
                for Employees to Punch-In and Out Each Day ........................ 11

          2.    Pactiv's Timekeeping Policies and Practices Are Not Uniform
                Across the Country .......................................................... 14

          3.    Plaintiff's Boilerplate, Conclusory Declarations Provide
                Insufficient Support for Nationwide Conditional Certification ......... 16

          4.    Pactiv Evergreen Employees Understand They Cannot Work
                Outside Their Shift Times Without Authorization ...................... 19

    C.    The Proposed Notice Method and Forms are Harassing, Objectionable,
          and Premature ......................................................................... 22

          1.    The Scope of Plaintiff's Proposed Notice Must Be Revised ............ 22

          2.    The Content of Plaintiff's Proposed Communications Must Be
                Revised ....................................................................... 22

          3.    Any Notice Should Be Disseminated By A Third-Party
                 Administrator By Regular Mail Only and the Court Should Deny
                 Plaintiff's Request For Putative Class Members' Personal
                 Information ..................................................................... 23

    D.    A Sixty-Day Notice Period is Appropriate ....................................... 25

IV.   CONCLUSION............................................................................... 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adair v. Wisconsin Bell, Inc.*,
   No. 08-C-280, 2008 WL 4224360 (E.D. Wis. Sept. 11, 2008)............................................9, 12

*Amandah v. Alro Steel Corp.*,
   2020 WL 4926653 (E.D. Wis. Aug. 21, 2020)........................................................................16

*Barrett v. NorthShore Univ. Healthsys.*,
   No. 1:17-CV-09088, 2019 WL 4412726 (N.D. Ill. Sept. 16, 2019).......................................16

*Bigger v. Facebook, Inc.*
   375 F. Supp. 3d 1007 (N.D. Ill. 2019) ..................................................................................25

*Black, et al. v. P.F. Chang's China Bistro, Inc.*,
   2017 WL 2080408 (N.D. Ill. 2017) .......................................................................................18

*Blakes v. Ill. Bell Tel. Co.*,
   2011 U.S. Dist. LEXIS 43147 (N.D. Ill. Apr. 21, 2011) ........................................................10

*Blakes v. Ill. Bell Telephone Co.*,
   2011 WL 2446598 (N.D. Ill. June 15, 2011)..........................................................................23

*Boyd v. Alutiq Global Solutions, LLC*,
   2011 U.S. Dist. LEXIS 88656 (N.D. Ill. Aug. 8, 2011) .........................................................10

*Brickey v. Dolgencorp, Inc.*,
   No. 06-cv-6084L, 272 F.R.D. 344 (W.D.N.Y. 2011) .............................................................11

*Cain v. TruckMovers Depot, Inc.*,
   2022 WL 4364789 (N.D. Ill. Sept. 21, 2022) ........................................................................16

*Calloway v. AT&T Corp.*,
   419 F. Supp 3d. 1031 (N.D. Ill. 2019) ...................................................................................22

*Drake v. Aerotek, Inc.*
   2015 WL 6554592 (W.D. Wis. Oct. 29, 2015)........................................................................20

*Flores v. Lifeway Foods, Inc.*,
   289 F. Supp. 2d 1042 (N.D. Ill. 2003) .........................................................................9, 17, 18

*Gromek v. Big Lots, Inc.*,
   2010 U.S. Dist. LEXIS 134009 (N.D. Ill. Dec. 17, 2010) ......................................................10

*Hannah v. Huntington National Bank*,
2020 WL 2571898 (N.D. Ill. May 21, 2020) ........................................................18

*Hinterberger v. Catholic Health Sys.*,
No. 08-CV-3805, 2009 U.S. Dist. LEXIS 97944 (W.D.N.Y. Oct. 21, 2009) ........................14

*Hoffmann-La Roche, Inc. v. Sperling*,
493 U.S. 165 (1989)............................................................................9, 24

*Hudson v. Protech Security Group, Inc.*,
237 F. Supp. 3d 797 (N.D. Ill. 2017) ...................................................................23

*Jirak v. Abbott Laboratories, Inc.*,
566 F. Supp. 2d 845 (N.D. Ill. 2008) ...................................................................23

*In re Lease Oil Antitrust Litig.*,
186 F.R.D. 403 (S.D. Tex. 1999)........................................................................24

*Millings v. Transdev Serv's, Inc.*,
2023 WL 6541318 (N.D. Ill. Oct. 6, 2023)..............................................................17

*Muir v. Guardian Heating and Cooling Serv's, Inc.*,
2017 WL 959028 (N.D. Ill. Mar. 13, 2017) .............................................................25

*Nehmelman v. Penn Nat'l Gaming, Inc.*,
822 F.Supp.2d 745 (N.D. Ill. 2011) ....................................................................24

*Nogueda v. Granite Masters, Inc.*,
2010 U.S. Dist. LEXIS 37657 (N.D. Ind. Apr. 14, 2010) ................................................10

*Pacheco v. Boar's Head Provisions Co.*,
671 F. Supp. 2d 957 (W.D. Mich. 2009) ................................................................20

*Piazza v. New Albertsons, LP*,
2021 WL 365771 (N.D. Ill. Feb. 3, 2021) ..............................................................25

*Reab v. Electronic Arts, Inc.*,
214 F.R.D. 623 (D. Colo. 2002) .......................................................................23

*Robles v. Brunswick Corp.*,
2020 WL 109776 (E.D. Wis. Jan. 9, 2020)..............................................................12

*Rowe v. Hamilton*,
No. 6:16-03259-CV-RK, (2017 U.S. Dist. LEXIS 21726)....................................................23

*Rudd v. T.L. Cannon Corp.*,
2011 WL 831446 (N.D.N.Y. 2011) .....................................................................18

*Salinas v. O'Reilly Auto., Inc.*,
    2005 WL 3783598 (N.D. Tex. 2005) ................................................................19

*Severston v. Phillips Beverage Co.*,
    137 F.R.D. 264 (D. Minn. 1991) .....................................................................9

*Smallwood v. Illinois Bell Telephone Co.*,
    710 F. Supp. 746 (N.D. Ill. 2010) ...................................................................22

*Stickle v. SCI W. Mkt. Support Ctr., L.P.*,
    2009 WL 3241790 (D. Ariz. Sept. 30, 2009) ...................................................23

*Strait v. Belcan Engineering Group. Inc.*,
    911 F. Supp. 2d 709 (N.D. Ill. 2012) ...............................................................20

*Tom v. Generac Power Systems, Inc.*,
    2018 WL 3696607 (E.D. Wis. Aug. 3, 2018) ...................................................13

*Vazquez v. Ferrara Cando Co.*,
    2016 WL 4417071 (N.D. Ill. Aug. 19, 2016) ...................................................16

*Wacker v. Personal Touch Home Care, Inc.*,
    No. 4:08CV93, 2008 WL 4838146 (E.D. Mo. Nov. 6, 2008) ...............................10

*Waine-Golston v. Time Warner Entertainment-Advance/New House Partnership*,
    2013 WL 1285535 (S.D. Cal. Mar. 27, 2013) ...................................................12

*Wallace, et al. v. Evergreen Packaging, LLC*,
    Case No. 22-CV-337 (E.D. Ark.) ....................................................................18

*Wheeler v. City of Detroit*,
    No. 11-CV-11455, 2012 WL 1119300 (E.D. Mich. Apr. 3, 2012) ........................11

*Williams, et al. v. TopHAT Logistics, Inc., et al.*,
    Case No. 23-cv-1573, 2023 WL 8190366 (N.D. Ill. Nov. 27, 2023) ............. *passim*

*Xavier v. Belfor USA Group, Inc.*,
    585 F. Supp. 2d 873 (E.D. La. 2008) ..............................................................10

**Statutes**

29 U.S.C. § 216(b) .............................................................................................9, 10

Fair Labor Standards Act ............................................................................... *passim*

**Other Authorities**

29 C.F.R. § 785.48(a) ............................................................................................12

iv

29 C.F.R. § 785.48(b) ................................................................................................12

29 C.F.R. §785.248(a) ...............................................................................................14

## I.     SUMMARY OF OPPOSITION

Plaintiff seeks to conditionally certify a collective of *tens of thousands* of current and former hourly production workers who are employed by different corporate entities, work at 66 different facilities across 18 states, hold different job positions, and work under different managers. In support of certification, Plaintiff relies on evidence from just **four** employees at just **two** facilities to claim that Pactiv Evergreen, Inc.[1] and Evergreen Packaging, LLC (hereinafter referred to as "Defendants" or "Pactiv") and the other 64 facilities across the country have a uniform policy and practice of unlawfully "rounding" employee time records and requiring employees to work off-the-clock. As described more thoroughly below, this contention is patently, demonstrably **false**: There is no centralized "rounding" policy that applies to all putative class members. Rather, each of Pactiv's 66 facilities has their own unique timekeeping practices, which are different from those at other facilities, and in some cases, vary even within a particular facility.  This dizzying array of policies and practices is the exact opposite of the type of common policy that Plaintiff is required to demonstrate for collective certification.

As this Court recently made clear:

> "Plaintiffs must provide some evidence in the form of affidavits, declarations, deposition testimony, or other documents **to support the allegations that other similarly situated employees were subjected to a common policy that violated the law**. . . Conditional certification is not automatic. . . [and] [P]laintiffs must "demonstrate similarity among the situations of each plaintiff beyond simply claiming that the FLSA has been violated; **an identifiable factual nexus that binds the plaintiffs together as victims of a particular violation of the overtime laws generally must be present**."

*See Williams, et al. v. TopHAT Logistics, Inc., et al.*, Case No. 23-cv-1573, 2023 WL 8190366, at *6 (N.D. Ill. Nov. 27, 2023) (emphasis added). Viewed against this requirement, Plaintiff's theory fails because she cannot identify a single, common unlawful policy that exists across the

---

[1] Notably, Pactiv Evergreen, Inc. does not employ *any* hourly production workers.

1

Defendant companies and violates the Fair Labor Standards Act ("FLSA"). Plaintiff also does not (and she cannot) identify any factual nexus that binds the collective together as victims of such an unlawful policy and a particular violation of the overtime laws.

*First,* Plaintiff fails to set forth facts demonstrating that Pactiv maintained a common, unlawful timekeeping policy that violated the FLSA. As detailed below, *some* Pactiv facilities utilize lawful grace periods for *some* employees for their convenience in punching in and/or out of work. This is unquestionably permissible under the FLSA's governing rules, and Plaintiff presents no evidence to the contrary. Moreover, the only evidence offered here that is consistent among all Pactiv facilities is that they all expressly prohibit employees from performing work within any grace period provided and that they ensure that employees are prohibited from working off-the-clock. As demonstrated by numerous declarations from Pactiv, production workers and their supervisors universally understand that Pactiv prohibits employees from working off-the-clock during any grace period and there is absolutely no expectation that they do so. Thus, the only common policy regarding off-the-clock work is that it is prohibited across the Company. Plaintiff does not, because she cannot, set forth *any* evidence that she and all putative collective members were subject to a common, unlawful policy that violates the FLSA.

*Second*, even if Plaintiff were able to show that there was an unlawful policy at a given facility, she cannot show that it is "common" across the putative class. Here, where Plaintiff seeks conditional certification of a collective across thousands of non-exempt employees working at dozens of facilities across separate entities, she must show *some* evidence of a common policy or plan, and that it is uniformly applied to the putative collective who work in other locations under different supervision and management. She provides no such evidence. The only evidence here is that there are *numerous* different timekeeping practices that are not

2

uniformly applied across companies, business units, *or even within the same work location*. While some Pactiv locations may utilize a lawful grace period for certain employees to punch-in and out of their shifts, the practices vary widely. Some facilities utilize a grace period at both the front and back end of employee shifts, other locations utilize a grace period only on the front end of employee shifts, and, within some locations, employees do not utilize any grace period at all. What is left is a dizzying array of policies, procedures, and practices that do not apply uniformly to the thousands of workers in the putative collective.

*Third*, Plaintiff offers only **four** boilerplate, identical declarations from **two** of Pactiv's facilities. These declarants offer no evidence that they have ever even stepped foot inside any of the 64 other facilities for which Plaintiff now seeks certification, much less that they have first-hand (or any) knowledge of the timekeeping practices at those facilities. This "evidence" is fundamentally insufficient to support nationwide conditional certification of so many employees at different facilities, doing different jobs, under different timekeeping, scheduling, and shift start policies and procedures. Plaintiff's four declarations do not provide any evidence of a common policy that spans the Company and affects the putative collective uniformly. At most, Plaintiff's declarations state (or mis-state) alleged policies at the two facilities where Plaintiff and the declarants worked; Plaintiff then asks the Court to take the extraordinary step of concluding -- without a shred of supporting evidence -- that the alleged policies at these two facilities also exist at 64 other facilities.[2]

Therefore, Plaintiff does not meet this Court's standard for conditional certification as she cannot show that other similarly situated employees were subjected to a common policy that

---

[2] As discussed below, to the extent Plaintiff is left to complain of a *de facto* 'off-the-clock' policy or practice across all of Pactiv's facilities based on evidence from *two* Company facilities through *four* boilerplate declarations, her claims for nationwide conditional certification must suffer the same fate. The declarations Plaintiff submitted as evidence do not provide a basis to support her supposition that off-the-clock work exists anywhere in the Company outside of the two locations where she and her three declarants worked.

violated the law, and she has not identified any factual nexus that binds the plaintiffs together as victims of a particular violation of the overtime laws. *See TopHAT Logistics, Inc.*, 2023 WL 8190366, at *6. Her Motion must be denied.

## II.     FACTUAL BACKGROUND

### A.     Overview of Pactiv Evergreen, Inc.

Evergreen Packaging's roots stretch back to 1880 and, not long after, in 1908, the Company opened up its first mill operations in Canton, North Carolina. *See* Declaration of Tonya Reynolds, at ¶ 3, attached hereto as **Exhibit A**. As a result of a series of mergers between Evergreen Packaging, LLC, Pactiv, LLC, and Fabri-Kal, Corp., by 2021, Pactiv Evergreen became the leading manufacturer of fresh food and beverage packaging in North America. *Id*. Pactiv Evergreen has grown to encompass sixty-six facilities throughout North America. *Id*. In total, there are now nearly 14,000 hourly production workers employed by Pactiv, LLC, Fabri-Kal, and Evergreen Packaging. *Id*.

Each facility within this corporate structure operates independently, with its own policies and practices that are based on historical practice, negotiated union requirements, and/or the facility's individual business needs. *Id.*, ¶¶ 5-7; Declaration of Jeffery Guill, at ¶ 3, attached hereto as **Exhibit B**. This lack of uniformity applies to the timekeeping practices at each facility across the country, and consequently, there is ***no centralized timekeeping policy*** that uniformly controls each Pactiv Evergreen facility. Guill Decl., at ¶ 3. To the contrary, each facility has developed their own compliant, lawful, timekeeping practices that allow employees to timely punch-in and out and ensures that they are paid for all time worked. *Id.: See e.g.,* Declaration of Nicole Woods, at ¶¶ 5-6, attached hereto as **Exhibit C**; Declaration of Brad Metzger, at ¶ 4, attached hereto as **Exhibit D**; Declaration of Madeline Grall, at ¶¶ 5-6, attached hereto as **Exhibit E**; *see also* Guill Decl., at Ex. 1. Some, but not all, facilities allow some employees to

4

punch-in and out each day during a facility-specific grace period prior to and after the end of their scheduled shift times. *See e.g.,* Guill Decl., at ¶ 3, Declaration of Linda Levingston-Madrigal, at ¶ 5, attached hereto as **Exhibit F**. These differing grace periods, across certain of Pactiv's facilities, are offered to employees as a convenience to allow them to be ready to work at the start of their scheduled shift time without queueing up at the time clock. Metzger Decl., at ¶ 5; Grall Decl., at ¶ 4; Declaration of Ronald Branch, at ¶ 4; attached hereto as **Exhibit G**. However, how -- or if – the grace periods function at each facility varies widely.

**B. Timekeeping Practices Throughout Pactiv Evergreen**

There is no centralized timekeeping policy applicable to all Pactiv facilities due to the vast differences in operational structure and business needs within each facility. *See supra*. A sampling of just ten of the facilities from across all three Pactiv companies, three of which are facilities where production workers are represented by a union and the practices governed by a collective bargaining agreement, demonstrates this:

| Pactiv Location | Timekeeping Practices at Facility |
|---|---|
| **Athens, Georgia (Evergreen)** | This Evergreen facility, the facility in which Plaintiff Woodall worked, is a union organized facility and the timekeeping procedures are set forth in the union contract between the Athens facility and the Local Steelworkers Union. *See* Woods Decl., at ¶¶ 3-5, 8. Under this contract, the facility **utilizes a 7-minute grace period on both the start and end of their shifts.** *Id.*, at ¶¶ 5-6. **Employees cannot clock in prior to 7 minutes before the start of their shift.** *Id.* **If they try to clock-in before the 7 minutes, their attempted punch will be rejected at the time clock, and they must see a supervisor for permission to punch in and start work early.** *Id.* Importantly, Woodall never questioned or complained about the accuracy of her time records, nor did she ever inform management that she worked and did not get paid for that time. *Id.*, at ¶ 8. **Site management is unaware of anyone at the Company complaining about working off-the-clock or performing work during the grace period.** *Id.*, at ¶ 9. |
| **Plant City, FL (Evergreen)** | This Evergreen non-union facility determines punch-in grace periods based on seniority at the plant, for example, **senior operators are expected to clock-in 12-minutes before the scheduled start of their shift; mid-level operators are expected to clock-in 6-minutes before their shift; and junior-level operators are expected to clock-in just a few minutes before their scheduled shift times.** Grall Decl., at ¶ 5. |

| Pactiv Location | Timekeeping Practices at Facility |
|---|---|
| | Employees do not have grace periods at the end of their shifts. *Id.* However, Maintenance and Shipping employees **do not have punch-in windows and clock-in precisely at the start or end of their shifts.** *Id.*, at ¶ 7 **Supervisors at Plant City have never received a complaint of employees working off-the-clock and they are unaware of employees ever working off-the-clock.** *Id.*, ¶¶ 10-11. |
| **Temple, TX (Pactiv)** | This Pactiv non-union facility utilizes a **7-minute grace period policy for the start and end of employee shifts for 12-hour shifts.** *See* Declaration of Lonny Otto, at ¶ 6, attached hereto as **Exhibit J**. This timekeeping practice allows employees to punch-in no more than 7-minutes prior to their scheduled shift-start time. *Id.* Similarly, the 7-minute grace period at the end of the shift is meant to provide a short window of time for employees to punch out and leave work at their allotted end of shift. *Id.* **Employees who work 8-hour shifts, on the other hand, do not use grace periods at all.** *Id.*, at ¶ 8. **Site management is unaware of any employees performing work off-the-clock or complaining about working off-the-clock during the grace period windows.** *Id.*, at ¶ 9. |
| **Kalamazoo, MI (Fabri-Kal)** | This Fabri-Kal non-union facility **utilizes a 15-minute grace period window to clock-in each day**; however, it is standard practice to clock-in 5-minutes before the start of employee shifts each day. Metzger Decl., at ¶ 4. There is **no grace period at the end of employee shifts**. *Id.*, at ¶ 5. There are also **15 salaried, nonexempt employees who, contrary to hourly employees who record their time on timeclocks, record their time on paper timecards and do not use electronic timeclocks.** *Id.*, at ¶ 4. **All salaried, nonexempt employees do not use grace periods at all.** *Id.* In addition to the salaried, nonexempt employees, **"core team" maintenance employees that work on a flexible schedule do not use grace periods at all.** *Id.* |
| **Malvern, AR (Pactiv)** | This Pactiv non-union facility employs six of the seven opt-in plaintiffs, who are production workers that have a **5-minute window to punch-in and out each day**[3]. Guill Decl., at ¶ 3. Malvern also has six salaried non-exempt employees at the facility and these employees do not punch-in/out on the timeclocks each day. *Id.*, at ¶ 7. **These employees record their time on a separate system that details all of their hours worked.** *Id.* **Other than the Opt-In Plaintiff declarations, no other production workers have complained of working off-the-clock and, in fact, a sampling reveals that they all get paid for all time worked.** *Id.*, at ¶ 10. |
| **Turlock, CA (Evergreen)** | This Evergreen union facility does not have a grace period for employees to punch-in each day. *See* Declaration of Levingston-Madrigal, at ¶ 5. **Instead, production workers are expected to be clocked in and ready to work 10 minutes before the start of their shift.** *Id.* **During these 10 minutes, employees engage in a pre-shift meeting with their shift supervisor.** *Id.* **They are, of course, <ins>paid for all of this time</ins>.** *Id.* **Management is unaware of any employees** |

[3] When referring to grace periods herein, this means, for example, employees who punch-in at 6:58 a.m. begin getting paid at 7:00 a.m. and, similarly, employees who punch-out at 6:55 p.m. are paid until 7:00 p.m.

| Pactiv Location | Timekeeping Practices at Facility |
|---|---|
| | **working off-the-clock and no employee has complained about working off-the-clock at Turlock.** *Id*., at ¶ 10. |
| **Fresno, CA (Pactiv)** | This Pactiv non-union facility **utilizes a 7-7-7 rule – employees have 7-minutes to punch-in prior to the start of their shifts and the shift then starts at their regularly scheduled shift time.** *See* Declaration of Leah Watters, at ¶ 7, Ex. A, attached hereto as **Exhibit H.** **Employees also have 7 minutes at the end of their shift to punch-out each day.** *Id*. This means that employees who punch out, for example on first shift, between 4:30 p.m. and 4:37 p.m. will be paid for their full eight hours of work each day. *Id*., at ¶ 5. The HR Manager in this facility was aware of only one complaint from an employee who said he performed work during the 7-minute grace period – once she learned about this, she immediately corrected the employee's time and pay records and conducted training to ensure that everyone at the Fresno facility understood the 7-7-7 policy and that it was being applied appropriately. *Id*., at ¶ 7. |
| **Pine Bluff, AR (Evergreen)** | This Evergreen facility operates as a union-organized facility that operates under a different union contract. *See* Reynolds Decl., at ¶ 5. That **union contract sets forth a completely unique set of timekeeping practices as well as shift schedules because certain departments run three 8-hour shifts, others run two 12-hour shifts, and other departments do not run on any set schedule.** *Id*. **This unique union system provides 30-minute grace-periods at both the start and end of shifts that also incorporates a "shift-relief buddy system", where Pine Bluff employees are designated to a "buddy" who relieves them at the end of their shift.** *Id*. at, ¶ 7. Once the relief (or the buddy) arrives, the employee assigned to the earlier shift stops working and clocks out, and the buddy clocks in and begins taking over the operations of the job. *Id*. **Since September 2023, the Pine Bluff union contract was amended and now all production workers are paid to the punch with *no grace period*.** *Id*. at ¶ 11. |
| **Bridgeview, IL (Pactiv)** | This Pactiv non-union facility utilizes a 7-minute grace period policy for employees at the start and end of employee shifts. Branch Decl., at ¶ 4. **This timekeeping practice allows employees to punch-in no more than 7-minutes prior to their scheduled shift-start time.** *Id*. **Employees are not required to work, and do not perform any work, between the time they punch in, and the time of their scheduled shift start.** *Id*. **When employees punch in outside the 7-minute window, the grace period does not apply at all, and they are paid to the punch**. *Id*. Employees are also given 7 minutes at the end of their shift to punch-out. *Id*. **Supervisors at Bridgeview have never received a complaint of employees working off-the-clock and they are unaware of employees ever working off-the-clock.** *Id*., at ¶ 6. |
| **Canandaigua, NY (Pactiv)** | This Pactiv non-union facility utilizes a 7-minute grace period ***only*** at the start of employee shifts. *See* Declaration of Tina DeVey, at ¶¶ 5, 8, attached hereto as **Exhibit I**. Employees do not have a grace period at the ***end*** of their shifts. *Id*., at 5. **Employees at Canandaigua also have 30-minute overlaps between shifts to ensure continued operation** |

| Pactiv Location | Timekeeping Practices at Facility |
|---|---|
| | and ensure that employees are paid for all time spent working. *Id.*, at ¶ 3. **Site management is unaware of any employees working off-the-clock and no employee has complained about working off-the-clock at Canandaigua.** *Id.*, at 10. |

Beyond the varying timekeeping practices, there are different shift patterns that production employees can work, including eight-, ten-, and twelve-hour shifts, depending on the facility and department within the facility that the employee is assigned, and these shift patterns in turn affect site punch-in/out practices. Metzger Decl., at ¶¶ 3-5; Woods Decl., at ¶¶ 3-4; Grall Decl., ¶¶ 2-4; Branch Decl., ¶¶ 2-3; Guill Decl., ¶¶ 3-5; Watters Decl., ¶¶ 2-4; DeVay Decl., ¶¶ 3-4; Otto Decl., ¶¶ 3-4; Levingston-Madrigal Decl., ¶¶ 3-5; Reynolds Decl., ¶¶ 8-9. Further, several facilities and departments within those facilities, have scheduled overlap between shifts or "hot handoffs", so that incoming shift workers within those departments can have turnover discussions regarding what occurred on the prior shift while both the incoming and outgoing staff are on the clock. *See* Reynolds Decl., at ¶ 7, DeVay Decl., at ¶ 8; Levingston-Madrigal Decl., at ¶ 5; Otto Decl., at ¶ 3. These scheduling practices and shift patterns vary greatly from facility to facility, and department to department, and are dependent on the nature of the work and the preferences of the supervisors and plant managers who are responsible for scheduling. *See e.g.,* Reynolds Decl., at ¶ 9, DeVay Decl., at ¶ 8 (facilities participate in "hot handoffs"); *see* Woods Decl., at ¶ 3, Guill Decl., at ¶ 11 (facilities do not require "hot handoffs"); *see also* Branch Decl., at ¶ 5 (most employees do not "hot handoff"; however, employees within Thermoforming department do "hot handoff"). Thus, the policies that instruct how production workers keep their time and how they are paid, are created on a facility-by-facility basis, and do not emanate from a single source for any of the putative class. *Id*; Guill Decl., at ¶ 3.

The only policy that is consistent among the facilities is a clear and unequivocal prohibition on employees working off-the-clock in *any* capacity. Metzger Decl., at ¶ 9; Woods

Decl., at ¶ 7; Grall Decl., ¶ 7; Branch Decl., ¶ 4; Guill Decl., ¶ 6; Watters Decl., ¶ 7, Ex. A; DeVay Decl., ¶ 11; Otto Decl., ¶¶ 7; Levingston-Madrigal Decl., ¶¶ 5; Reynolds Decl., ¶ 14. Plaintiff does not (and cannot) identify a policy or practice to the contrary.

To be clear, Plaintiff fails to provide *any* records, declarations or witness statements to support any of her claims beyond Athens, GA and Malvern, AR. Plaintiff's meager evidence is not sufficient to meet even her "lenient" burden to conditionally certify a nationwide collective of Pactiv's hourly production workers.

## III. ARGUMENTS & AUTHORITIES

### A. Plaintiff Bears the Burden of Presenting Sufficient Evidence To Support Conditional Certification.

District courts have discretion to implement 29 U.S.C. § 216(b) by certifying FLSA lawsuits as collective actions and allowing notice to putative collective members. *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 171 (1989). In seeking court-authorized notice, Plaintiff is, in effect, asking for the court's assistance to locate potential plaintiffs and thereby expand the scope of the lawsuit. *Severston v. Phillips Beverage Co.,* 137 F.R.D. 264, 267 (D. Minn. 1991). Accordingly, courts should carefully exercise their discretion to avoid unnecessarily "stirring up" litigation. *Id.* This is imperative because Section 216(b) cases present the opportunity for abuse. *Hoffmann-LaRoche*, 493 U.S. at 171.

Courts in this District apply a two-part test to determine whether an FLSA claim should proceed on a collective basis. *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003). Under the first step, the named plaintiff must establish that others are similarly situated "by making a modest factual showing" demonstrating they "together were victims of a common policy or plan that violated the law." *Id.* (quotation marks and citations omitted).

This first step is an "important and functional step in the certification process." *Adair v.*

*Wisconsin Bell, Inc.*, No. 08-C-280, 2008 WL 4224360 (E.D. Wis. Sept. 11, 2008). "Though lenient, the 'modest factual showing' standard is not a mere formality." *Nogueda v. Granite Masters, Inc.*, 2010 U.S. Dist. LEXIS 37657, at *5 (N.D. Ind. Apr. 14, 2010). Nor is it "a matter of rubber-stamping." *Blakes v. Ill. Bell Tel. Co.*, 2011 U.S. Dist. LEXIS 43147, at *6 (N.D. Ill. Apr. 21, 2011). Rather, the named plaintiff must "demonstrate a factual nexus that binds potential members of a collective action together." *Gromek v. Big Lots, Inc.*, 2010 U.S. Dist. LEXIS 134009, at *2 (N.D. Ill. Dec. 17, 2010). The plaintiff must provide evidentiary support for this nexus; he cannot simply rely on his complaint. *Boyd v. Alutiq Global Solutions, LLC*, 2011 U.S. Dist. LEXIS 88656, at *18-19 (N.D. Ill. Aug. 8, 2011).

### B. Plaintiff and Putative Collective Members Were Not Subject to a Common Policy or Plan That Violated the FLSA

The fundamental inquiry in determining whether a collective action is proper under Section 216(b) is whether or not the plaintiffs are "similarly situated." As this Court has previously made clear, the plaintiffs must show that "they and potential plaintiffs together were victims of a common policy or plan that violated the law"; to do so, the plaintiff **must** demonstrate with evidence "an identifiable factual nexus that binds the plaintiffs together as victims of a particular violation of the overtime laws." *See TopHAT*, 2023 WL 8190366, at *6; *Xavier v. Belfor USA Group, Inc.*, 585 F. Supp. 2d 873, 878-79 (E.D. La. 2008) (refusing to grant conditional certification because plaintiff provided inadequate evidence of a "single [company] decision, policy, or plan that violated the law."); *Wacker v. Personal Touch Home Care, Inc.*, No. 4:08CV93, 2008 WL 4838146, at *2 (E.D. Mo. Nov. 6, 2008) (denying conditional certification where employee "failed to provide competent evidence of a company-wide policy" that violates the FLSA) (emphasis added).

An employer's mere adoption of a policy that, standing alone, does not violate the FLSA

cannot be used to show that a putative class was subject to a common policy or plan that violated the FLSA. *Brickey v. Dolgencorp, Inc.*, No. 06-cv-6084L, 272 F.R.D. 344, 347 (W.D.N.Y. 2011) ("The Court declines to hold that facially-lawful policies, which encourage store management to make productive use of employees' time or to report for work when scheduled, can form the equivalent of a 'common policy or plan that violate[s] the law,' merely because they '*indirectly* might encourage the minimization of overtime'"); *Wheeler v. City of Detroit*, No. 11-CV-11455, 2012 WL 1119300, *4-5 (E.D. Mich. Apr. 3, 2012) (denying conditional certification where use of lawful timekeeping system did not, by itself, constitute a policy violating the FLSA).

Here, **Plaintiff has failed to identify any single common unlawful policy that is violative of the FLSA.** The only common policies present here are lawful; namely, that employees are paid for all time worked and are not permitted to work off the clock. Beyond that, the timekeeping practices are dependent upon the specific and individualized policies applicable at each of the facilities nationwide. Thus, conditional certification is improper, and Plaintiffs' Motion should be denied.

### 1. *The FLSA Permits The Overarching Practice of Neutral Windows for Employees to Punch-In and Out Each Day*

The contention that Pactiv's pre-shift and post-shift timekeeping conventions constitute an "unlawful rounding policy", which only rounds in Pactiv's favor, is simply wrong. As described in detail above, there is no question that employees, the unions that represent employees at certain Pactiv facilities, and the Company's supervisors understand that any pre-shift and post-shift grace periods are time periods in which employees **should not** and **cannot** be working. Grall Decl., at ¶ 11; Woods Decl., at ¶¶ 5, 8-9; Branch Decl., at ¶¶ 4, 6; Guill Decl., at ¶ 10; DeVay Decl., at ¶ 10; Otto Decl., at ¶¶ 7, 9; *see also, e.g.,* Declaration of Lonnie Register, at ¶¶ 5, 6, attached hereto as **Exhibit K**; Declaration of Carey Barnette, at ¶¶ 3-5, attached hereto as

**Exhibit L**. For the employee's convenience, some Pactiv locations maintain a longstanding policy which allows certain Pactiv workers some time before and after shifts during which employees can punch-in and out; but employees are not permitted to work during those times unless authorized to do so. *See e.g.,* DeVay Decl., at ¶ 10; Grall Decl., at ¶ 5. Those pre- and post-shift punches are meant to ensure that employees have time to clock in and are ready to work at their scheduled shift times without the need to spend their time in queues at the time clocks. *Id*. Notably, this practice is expressly contemplated and authorized under the FLSA. Specifically, the regulations provide:

> In those cases where time clocks are used, employees who voluntarily come in before their regular starting time or remain after their closing time, do not have to be paid for such periods provided, of course, that they do not engage in any work. Their early or late clock punching may be disregarded.

29 C.F.R. § 785.48(a). This alone warrants denial of Plaintiff's motion for conditional certification: Plaintiff cannot allege a common unlawful policy that violates that FLSA because the policy as alleged by Plaintiff is expressly *lawful* under the FLSA. 29 C.F.R. § 785.48(b); *Adair v. Wisconsin Bell, Inc.*, 2008 WL 4224360, at *11 (E.D. Wis. Sept. 11, 2008); *Waine-Golston v. Time Warner Entertainment-Advance/New House Partnership,* 2013 WL 1285535, at *8 (S.D. Cal. Mar. 27, 2013) (granting summary judgment where employer had neutral, consistent rounding policy that, on average, neither overpaid nor underpaid employees); *Robles v. Brunswick Corp.*, 2020 WL 109776, at *7 (E.D. Wis. Jan. 9, 2020) (denying conditional certification where employer had lawful rounding policy and only the plaintiff stated she was instructed to work upon punching in).

Here, Plaintiff argues that she and other putative collective members punched-in and immediately went to their workstations to begin their shifts, which resulted in 10 to 15 minutes of uncompensated time. Dkt. 16-6 – Dkt. 16-9. However, to be clear, Plaintiff and the opt-in

plaintiffs never complained to their supervisors or informed the Company of their alleged off-the-clock work. Woods Decl., at ¶ 8; Guill Decl., at ¶ 8. As courts in this District have previously recognized, "[t]he mere act of clocking in before the start of a scheduled shift does not place the employer on notice that an employee begins to work before the scheduled start time." *Tom v. Generac Power Systems, Inc.*, 2018 WL 3696607, *5 (E.D. Wis. Aug. 3, 2018) (citing *Kellar v. Summit Seating Inc.,* 664 F.3d 169, 177 (7th Cir. 2011)). As outlined above, Pactiv's site-specific policies and procedures expressly prohibit employees from working outside their scheduled shift (and therefore during the punch-in/out windows) unless such work is approved by their supervisor. *See,* Metzger Decl., at ¶¶ 5-9; Woods Decl., at ¶¶ 5-9; Grall Decl., ¶¶ 7-11; Branch Decl., ¶¶ 4-6; Guill Decl., ¶¶ 5-11; Watters Decl., ¶¶ 4-8; DeVay Decl., ¶¶ 4-6; 8-10; Otto Decl., ¶¶ 6-9; Levingston-Madrigal Decl., ¶¶ 5-10; Reynolds Decl., ¶¶ 13-14. As purported collective members and supervisors across the country admit, neither Pactiv nor any facility maintains any policy or practice that requires employees to work prior to or after their scheduled shift times. *Id*. Plaintiff broadly contends that employees are consistently working outside their scheduled shift times; yet her claim of off-the-clock work at *every other facility* outside of Malvern and Athens is wholly unsupported. Plaintiff does not provide *any* evidence from any witness with any direct knowledge or foundation to support the contention that off-the-clock work occurred during any grace period at those facilities[4]. Instead, Plaintiff offers cookie cutter declarations with unfounded assumptions as to nationwide practices from four employees who worked only at the Athens, GA and Malvern, AR sites. This limited and threadbare evidence certainly does not

---

[4] To the extent Plaintiff claims that there is a common policy or practice of working off-the-clock at Pactiv facilities, the only evidence offered shows only that the individual Pactiv facilities prohibit off-the-clock work. *See e.g.,* Watters Decl., at ¶ 7, Ex. A; Grall Decl., at ¶ 7; Guill Decl., at ¶ 10. For example, the policy at Pactiv's Fresno, CA facility expressly prohibits off-the-clock work. *See* Watters Decl., at ¶ 7, Ex. A. Further, multiple managers across the Company confirmed that they prohibit off-the-clock work at their facilities. *See* Grall Decl., at ¶ 7; Guill Decl., at ¶ 10. Because there is only evidence of lawful off-the-clock policies and practices, Plaintiff cannot utilize those as a basis for conditional certification.

13

warrant conditional certification and does not support that class notices should be sent to *thousands* of current and former production workers across the country.

Accordingly, Pactiv's pre-shift and post-shift punch-in/out windows, during which employees are prohibited from working, are lawful under 29 C.F.R. §785.248(a). Plaintiff's attempt to fashion these into an unlawful "rounding policy" that rounds off compensable work time flies in the face of all of the evidence and should therefore be rejected.

### 2. *Pactiv's Timekeeping Policies and Practices Are Not Uniform Across the Country*

As described above, Plaintiff also does not (because she cannot) demonstrate that any timekeeping policy was "common" amongst the putative collective. To the contrary, as detailed above, Defendants utilize varied timekeeping practices at dozens of their facilities across the country – this includes different time windows for employees to punch-in, different time windows for employees to punch-out, and at several sites, no grace periods at all, all of which necessarily results in a complicated web of varying timekeeping practices across Pactiv facilities. *See supra* pg. 6-8. As this Court has made clear – "the litmus test is whether Plaintiffs can demonstrate that the decision maker was acting similarly with respect to the putative class" – here, the decision maker is unquestionably *not* common to members of the putative collective because the decisions vary from facility to facility – and in some instances, even *within* a particular facility. *See TopHAT*, 2023 WL 8190366, at *8; *Hinterberger v. Catholic Health Sys.*, No. 08-CV-3805, 2009 U.S. Dist. LEXIS 97944, at *16-20 (W.D.N.Y. Oct. 21, 2009) (plaintiffs can only attest to conditions and policies affecting their own practices).

Because Plaintiff cannot demonstrate that a single decision maker created an unlawful timekeeping policy that is *common* amongst the collective, her motion must be denied. As explained *supra* pp. 6-8, a review of the timekeeping practices across ten of Pactiv's facilities

demonstrates that Pactiv's timekeeping practices are decentralized, not common to the putative collective, and not subject to a single decision maker. A few examples are demonstrative:

- At Plaintiff's Athens facility, her union agreed to utilize **a 7-minute grace period at both the start and end of employee shifts**. Woods Decl., at ¶¶ 3-5, 8. On the other hand, the Kalamazoo, Michigan facility, which is non-union, **utilizes a 15-minute grace period window to clock-in each day** and there is no grace period at the end of the employee shifts.

- At the opt-in plaintiffs' Malvern, AR non-union facility, production workers utilize a **5-minute window to punch-in and out each day.** Guill Decl., at ¶ 5. In contrast, a production worker in Plant City, FL will have his/her grace periods based on seniority at the plant, for example, **senior operators are expected to clock-in 12-minutes before the scheduled start of their shift; mid-level operators are expected to clock-in 6-minutes before their shift; and junior-level operators are expected to clock-in just a few minutes before their scheduled shift times.** Grall Decl., at ¶¶ 5,6. And, beyond the difference in pre-shift grace periods, Plant City, unlike Malvern, does not utilize a grace period at the end of employee shifts. *Id.*

- Other facilities do not have a grace period at all. For example, Turlock, CA, a union-facility, does not utilize grace periods and, since September 2023, Pine Bluff, Arkansas, another union-facility, also does not utilize grace periods. *See* Levingston-Madrigal Decl., at ¶ 5; Reynolds Decl., at ¶ 11.

- Even within the same facility, employees are not subject to the same timekeeping practices. For example, while production employees in Temple, TX utilize a 7-minute grace period for employees to clock in and out each day, other employees within the Temple facility work on 8-hour shifts and do not have any grace period. Otto Decl., at ¶ 8.

- Similarly, in Kalamazoo, all salaried non-exempt employees and 'core' maintenance workers do not utilize any grace period. Metzger Decl., at ¶ 5.

In short, the only evidence before the Court is that Pactiv's policies and practices at each location arise not from a single decision maker, but instead from each site and their management teams, and in some cases, local unions through the collective bargaining process. *See supra*, pp. 6-8.

The result is that even at the two sites where Plaintiff and her three declarants were employed, there are stark differences even beyond the differences in the grace-period windows at the two facilities. For example, (i) Athens is a union-facility where the timekeeping practices are

set forth and negotiated via a union contract; Malvern is a non-union facility and the site, itself, sets forth its timekeeping practices; and (ii) Malvern has a set of non-exempt salaried employees who utilize a completely separate system for their timekeeping, and they do not have grace periods; Athens does not have non-exempt salaried employees. Woods Decl., at ¶¶ 3-6; Guill Decl., at ¶¶ 3-7.

Finally, and importantly, *none* of these timekeeping policies and practices violate the FLSA. To the contrary, courts in this district and around the country have routinely held that the practice of rounding to the nearest 5 minutes, or to the nearest tenth or quarter hour, is expressly approved by the FLSA regulations as long as it is used in a manner that does not result, over a period of time, in underpaying employees. *See Amandah v. Alro Steel Corp.*, 2020 WL 4926653, at *4 (E.D. Wis. Aug. 21, 2020) (denying conditional certification where lawful rounding policy was not applied uniformly to employees whose start and stop times went unmonitored by supervisors); *Cain v. TruckMovers Depot, Inc.*, 2022 WL 4364789, at *2 (N.D. Ill. Sept. 21, 2022) (Ellis, J.) (denying conditional certification where plaintiff could not allege facts about 'other impacted employees'); *Barrett v. NorthShore Univ. Healthsys.*, No. 1:17-CV-09088, 2019 WL 4412726, at *3 (N.D. Ill. Sept. 16, 2019) (Rowland, J.); *see also Vazquez v. Ferrara Cando Co.*, 2016 WL 4417071, at *6 (N.D. Ill. Aug. 19, 2016) (denying motion for conditional certification where plaintiff failed to provide "any evidence that any member of the putative collective other than himself was not adequately compensated"). Accordingly, Plaintiff's request for nationwide conditional certification where the timekeeping practices are not common across the collective must be denied.

### 3. *Plaintiff's Boilerplate, Conclusory Declarations Provide Insufficient Support for Nationwide Conditional Certification*

Plaintiff seeks to send notices to *thousands* of current and former Hourly Production

Workers at Pactiv facilities based almost entirely on four formulaic declarations. Three of the declarations are from individuals who only worked at Evergreen's Malvern, Arkansas facility and the other declaration is from Plaintiff, who only worked at the Athens, Georgia facility. Dkt. 16-6 – Dkt. 16-9. Plaintiff does not offer a single declaration or piece of evidence from outside of these two facilities. Instead, she asks this Court to grant nationwide conditional certification as to sixty-four other facilities based only on what those four individuals claim to have happened at their two sites. Reynolds Decl., at ¶ 3. That is, the four declarations from Plaintiff and her witnesses offer no actual observations with any foundation whatsoever as to what actually happens at any of the Companies' other 64 locations. ***Nor do they offer any actual evidence that employees in those facilities across the country perform work off-the-clock during any grace period.*** Instead, the four individuals offer only the conclusory allegation that every hourly production worker in Pactiv's other production locations across the country was subject to an alleged unlawful timekeeping practice. *See generally* Dkt. 16-5 – 16-9; Dkt. 17, at *9.

Several courts have rejected a plaintiff's conditional certification request under similar circumstances. *See e.g., Flores v. Lifeway Foods, Inc.,* 289 F. Supp.2d 1042, 1046 (N.D. Ill. 2003) (Norgle, J.) (denying conditional certification because affidavits reflecting on company's payment practice for "two out of fifty employees (four percent of Defendant's workforce) do not rise to the level of a common policy or plan by [Defendant] that violated the FLSA. This is not even a 'modest factual showing' of a common policy or plan, as that term has been used in other cases"); *Millings v. Transdev Serv's, Inc.*, 2023 WL 6541318, at *7 (N.D. Ill. Oct. 6, 2023) (denying nationwide conditional certification where plaintiffs lacked personal knowledge about the practices implemented by defendant at the facilities where they were not employed).

Indeed, in assessing all of Plaintiff's four declarations, the only ostensible "support" for a

17

nationwide collective is the same cookie-cutter, vague statement in each declaration that "I know that Defendant consistently paid other production workers for fewer hours than they had worked because I discussed this issue with other employees, and because I saw other employees clocking in and starting to work before their scheduled shifts and continuing to work after the end of their scheduled shifts" coupled with the allegation that "[b]ased on the number of production workers who worked with me and the number of other locations I believe Defendant has, I estimate that there are at least 100 other individuals who work or have worked as hourly production workers for Defendant since January 2020." Dkt. 16-6 – 16-9.[5] The declarants offer no foundation for ascribing their beliefs to any employees at any Pactiv facility outside of Athens or Malvern.

Other District Courts in this Circuit have expressly rejected such sweeping requests for conditional certification when the evidence only points to alleged practices at one or two specific locations. *See, e.g., Hannah v. Huntington National Bank*, 2020 WL 2571898, at *7 (N.D. Ill. May 21, 2020) (rejecting conditional certification of national class where plaintiff "failed to present evidence that anyone outside *his own office* had a similar experience." (emphasis in original); *Black, et al. v. P.F. Chang's China Bistro, Inc.*, 2017 WL 2080408, at *10 (N.D. Ill. 2017) (holding that declarations from two employees who each worked exclusively at one P.F. Chang's restaurant location did not warrant expanding conditional certification to any other restaurants); *Flores*, 289 F. Supp. 2d at 1046 ("[A] demonstration of Lifeway's payment practice concerning two out of fifty employees ... does not rise to the level of a common policy or plan by Lifeway that violated the FLSA. This is not even a 'modest factual showing' of a common policy or plan, as that term has been used in other cases."); *see also Rudd v. T.L. Cannon Corp.*, 2011

---

[5] Notably, each of Plaintiffs' declarations submitted with their Motion parrot the same language. Dkt. 16-6 – 16-9. Importantly, these declarations **are nearly identical** to the declarations submitted by the Plaintiffs in the case entitled *Wallace, et al. v. Evergreen Packaging, LLC*, Case No. 22-CV-337 (E.D. Ark.), where counsel for Plaintiff in the instant case was the same counsel for Plaintiffs in *Wallace*.

WL 831446, at *9–10 (N.D.N.Y. 2011) (limiting the collective action to employees at one Applebee's location where the submitted affidavits "fall short of identifying a particular policy or practice applied by the defendants uniformly across the board at all of their locations"); *Salinas v. O'Reilly Auto., Inc.,* 2005 WL 3783598, at *6 (N.D. Tex. 2005) (denying collective action at step one, finding that the evidence submitted – including six declarations from employees at various locations – merely showed "that a handful of [defendant's] managers have committed possible FLSA violations in a variety of ways," as opposed to a "company-wide policy or practice"). Plaintiff's declaration and the opt-in declarations are too insubstantial and too scant to conditionally certify a nationwide collective.

### 4. *Pactiv Evergreen Employees Understand They Cannot Work Outside Their Shift Times Without Authorization*

The only evidence before the Court about what happens outside of the two sites where Plaintiff and her declarants worked is Pactiv's evidence from *eight* of its other facilities, which demonstrates the lack of a common timekeeping policy. These declarations confirm that the purported collective members: (i) are directed to not perform any work between the time they punch in and the start of their scheduled shift time; (ii) are directed to only perform work during their scheduled shift times unless otherwise authorized by their supervisors; (iii) have not complained about working off-the-clock prior to or after their scheduled shift times and, if an employee does raise any pay discrepancy, it is promptly dealt with by site management and employees are paid for all time worked; and (iv) know that they have avenues to adjust their time records if they ever work outside of their scheduled shift times. Metzger Decl., at ¶¶ 5-9; Woods Decl., at ¶¶ 5-9; Grall Decl., ¶¶ 7-11; Branch Decl., ¶¶ 4-6; Guill Decl., ¶¶ 5-11; Watters Decl., ¶¶ 4-8; DeVay Decl., ¶¶ 4-6; 8-10; Otto Decl., ¶¶ 6-9; Levingston-Madrigal Decl., ¶¶ 5-10; Reynolds Decl., ¶¶ 7, 11-14.

Most importantly, Pactiv's declarations from management at facilities across the country demonstrate that none of the production workers are required or permitted to work outside their scheduled shift times without adjusting the employees' schedule to pay for additional time worked and none of the production workers are aware of employees working any time during the grace periods without being paid. Metzger Decl., at ¶¶ 5-9; Woods Decl., at ¶¶ 5-9; Grall Decl., ¶¶ 7-11; Branch Decl., ¶¶ 4-6; Guill Decl., ¶¶ 5-11; Watters Decl., ¶¶ 4-8; DeVay Decl., ¶¶ 4-6; 8-10; Otto Decl., ¶¶ 6-9; Levingston-Madrigal Decl., ¶¶ 5-10; Reynolds Decl., ¶¶ 10-14. Under such circumstances, certification is not appropriate. *Drake v. Aerotek, Inc.* 2015 WL 6554592, at *1 (W.D. Wis. Oct. 29, 2015) (certification denied where the employer had a written policy requiring that all hours worked be recorded, notwithstanding evidence that some individual supervisors instructed employees to ignore that policy); *Pacheco v. Boar's Head Provisions Co.*, 671 F. Supp. 2d 957, 961-963 (W.D. Mich. 2009) (certification denied where employer's written policies expressly prohibited off-the-clock work, and plaintiffs failed to present evidence of a "common or uniform practice ... to not follow [the employer's] formal, written policy"); *see also Strait v. Belcan Engineering Group. Inc.*, 911 F. Supp. 2d 709, 728-729 (N.D. Ill. 2012) (holding that when alleged violations do not stem from a company-wide policy or plan, collective treatment is not appropriate).

In addition to the lack of evidence that employees were working off-the-clock at other Pactiv facilities, there is significant evidence that there is not such a practice even within Plaintiff's own Athens, Georgia facility. Employees at the Athens plant understand that they cannot work during the grace periods and do not perform work off the clock. *See* Declaration of Stephanie Stokes, at ¶¶ 6-7, attached hereto as **Exhibit M**; Declaration of Courtney Varnum, at ¶¶ 7-10, attached hereto as **Exhibit N**; Declaration of Marilyn Harrison, at ¶¶ 4, 6-8, attached

20

hereto as **Exhibit O**; Declaration of Zoila Peterman, at ¶¶ 3-4, 7, attached hereto as **Exhibit P**. The Athens, Georgia facility is a unionized workforce and the union representing Pactiv's employees does not allow them to work for free – in fact, the union president makes clear that if "anyone is lifting a hand, they're getting paid" and he is unaware of any employees ever complaining that they were not paid for all time worked. Barnette Decl., at ¶¶ 7, 14. It defies logic that represented employees would be routinely working, as Plaintiff's counsel contends, up to 15 minutes per shift, per week, and not getting compensated for such time worked. As the Athens, Georgia union president makes clear, if employees were working and not getting paid appropriately, it is an issue that immediately would have been brought to the union. *Id*.[6] Finally, as demonstrated by the *nine* declarations from the union's most senior employees at Athens, *all of whom are purported collective members*, employees know they are prohibited from working outside their scheduled shift without authorization; understand they are supposed to start and stop work according to their schedules; and do not perform work off-the-clock. *See* Stokes Decl., at ¶¶ 6-7; Varnum Decl., at ¶¶ 8-10; Harrison Decl., at ¶¶ 6-8; Barnette Decl., at ¶¶ 5-7; Register Decl., at ¶¶ 5-7; Peterman Decl., at ¶¶ 4-5; Declaration of Lane Kesler, at ¶¶ 4-8, attached hereto as **Exhibit Q**; Declaration of Olivia Thomas-Harris, at ¶¶ 7-9, attached hereto as **Exhibit R**; Declaration of Tim Callaway, at ¶¶ 7-9, attached hereto as **Exhibit S**.

Accordingly, Plaintiff's contention that Pactiv sets an unlawful timekeeping policy that fosters a culture where employees are consistently working off-the-clock is meritless. The undisputed evidence is clear that Pactiv prohibits the putative collective from working outside of their scheduled shift times without authorization and this prohibition is well understood and

---

[6] Notably *several* of Woodall's co-workers have testified that they never witnessed her working off-the-clock. *See* Barnette Decl., at ¶¶ 9-10; Thomas-Harris Decl., at ¶¶ 10-11; Peterman Decl., at ¶ 6. In fact, the Athens' Union President made clear that Woodall never complained to him about working off-the-clock or not getting paid for all time worked; to the contrary, Mr. Barnette described that Woodall would routinely get to her machine late and that there was no opportunity for her to do work off-the-clock. Barnette Decl., at ¶¶ 9-13.

followed by the putative collective.

**C.     The Proposed Notice Method and Forms are Harassing, Objectionable, and Premature**

Plaintiff's failure to adequately support her argument for conditional certification is grounds for denial of Plaintiff's Motion. Even if the Motion is granted, however, Pactiv objects to Plaintiff's overbroad proposed Notice and Consent to Join Collective Action. Furthermore, Pactiv objects to Plaintiff's proposed methods of disseminating notice to the putative collective members and Plaintiff's proposed 90-day notice period.

**1.     *The Scope of Plaintiff's Proposed Notice Must Be Revised***

Should the Court decide to authorize notice, Plaintiffs' suggested Notice should be amended in several ways. First, for the reasons set forth above, the scope of any putative class should be limited, at most, to the Company's Athens, Georgia and Malvern, Arkansas facilities – the only facilities where Plaintiff and the Opt-In Plaintiffs worked. Plaintiff's Notice should further be limited to encompass the appropriate limitations period – three years prior to the date the Court rules on Plaintiffs' Motion. The statute of limitations period runs from when collective action member files notice of consent to join the lawsuit, not from the date the lawsuit is filed. *See Smallwood v. Illinois Bell Telephone Co.*, 710 F. Supp. 746, 753 (N.D. Ill. 2010) (approving sixty-day notice period because the "FLSA statute of limitations continues to run on each individual's claim prior to the filing of their written consent to join the action."); *Calloway v. AT&T Corp.*, 419 F. Supp 3d. 1031, 1035 (N.D. Ill. 2019).

**2.     *The Content of Plaintiff's Proposed Communications Must Be Revised***

The content of Plaintiffs' proposed communications to the putative class must be revised due to several deficiencies in the communications, including but not limited to:

- The communications should include disclaimers stating that the Court has authorized the Notice but takes no position concerning the merits of the case (*see*

Dkt. 16-1).

- The communications should include information that opt-in plaintiffs will be subject to written discovery, preservation of documents, and depositions.

- The communications must be revised to delete implications that any individual who joins the action will recover wages (*see* Dkt. 16-1).

- The communications must be revised to delete the implication that this lawsuit will settle (*see* Dkt. 16-1).

- The communications must be revised to accurately reflect the scope of the collective that has been conditionally certified.

A meet and confer with counsel regarding the issues identified above is appropriate in this context. *See Jirak v. Abbott Laboratories, Inc.*, 566 F. Supp. 2d 845, 851 (N.D. Ill. 2008); *Hudson v. Protech Security Group, Inc.*, 237 F. Supp. 3d 797, 803 (N.D. Ill. 2017).

**3.** ***Any Notice Should Be Disseminated By A Third-Party Administrator By Regular Mail Only and the Court Should Deny Plaintiff's Request For Putative Class Members' Personal Information***

The Court should plainly reject Plaintiff's request for notice by electronic mail. Plaintiffs have not provided any factual basis for presuming that putative collective members would not receive notice submitted by regular mail. *Blakes v. Ill. Bell Telephone Co.*, 2011 WL 2446598, at *7 (N.D. Ill. June 15, 2011) (collecting cases where courts in this district held that e-mail addresses and phone numbers create privacy concerns and should not be shared)[7]. If the Court is inclined to authorize email notice, it should be noted that most hourly production employees do not have company email and the Company should not be expected to take affirmative steps to obtain personal email addresses from those employees for whom it does not already have that information. Pactiv further objects to disseminating notice to putative collective action members'

---

[7] *See also Rowe v. Hamilton,* No. 6:16-03259-CV-RK, 2017 U.S. Dist. LEXIS 21726, at *6-8 (W.D. Mo. Feb. 16, 2017) (denying plaintiffs' requests for notice by email and for an order requiring defendant to produce email addresses for putative class members); *Stickle v. SCI W. Mkt. Support Ctr., L.P.*, 2009 WL 3241790, at *7 (D. Ariz. Sept. 30, 2009) (denying plaintiff's request to order notice by email or by posting); *Reab v. Electronic Arts, Inc.*, 214 F.R.D. 623, 630 (D. Colo. 2002) (denying request for notice by email).

company email addresses (to the extent they have such email addresses), as such notice is intrusive to the Company and implies that Evergreen and this Court endorse the notice and joining the litigation.

Plaintiffs' counsel's declaration details the firm's history of encountering problems when distributing notice in conditionally certified actions. *See* Sanford Decl., ¶¶ 5-13. Given counsel's own admissions regarding these difficulties, the Court should appoint a third-party administrator to distribute any notice in this action. *See Nehmelman v. Penn Nat'l Gaming, Inc.*, 822 F.Supp.2d 745 (N.D. Ill. 2011). Use of a third-party administrator preserves the privacy of putative collective members and requires that the Company produce personal information concerning employees and former employees to only the third-party administrator on a confidential basis. Furthermore, Plaintiffs offer no evidence that their counsel has the appropriate data security protocols and protections in place to safeguard the private and confidential information of the putative collective members, many of whom will never join this case. Given that an administrator can be used, Plaintiffs' demand for an order requiring production of private information concerning putative collective members is moot.

Providing the putative collective list only to the third-party administrator will ensure that the notice process remains objective and will avoid the potential for abuse or misleading communications to the putative collective members. Indeed, granting Plaintiffs access to contact information for all current and former employees creates the potential for the very type of improper and unsupervised communications that the Supreme Court has warned against. *See Hoffmann-La Roche Inc.*, 493 U.S. at 171 (noting potential for abuse in unsupervised communications between counsel and putative collective members); *see also In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 441 (S.D. Tex. 1999) (finding that "unsupervised, unilateral

communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts"). The only contact information that Plaintiffs' counsel may need is that of putative collective members who actually choose to opt into this action. Moreover, even if a third-party administrator is not used, producing phone numbers and email addresses for the entire putative collective is unnecessary as any Notice should be sent by only regular mail.

Further, the Court should also reject Plaintiff's request for a reminder notice, as it would be "redundant" and "could be interpreted as an endorsement of the lawsuit." *TopHAT*, 2023 WL 8190366, at *8 (denying reminder notice) (Leinenweber, J.).

### D. A Sixty-Day Notice Period is Appropriate

In addition, the Court should find that a 60-day notice period is appropriate, rather than the 90-day notice period requested by Plaintiffs. *Muir v. Guardian Heating and Cooling Serv's, Inc.*, 2017 WL 959028, at *11 (N.D. Ill. Mar. 13, 2017) (Leinenweber, J.) (approving a 60-day notice period as opposed to the 90-day notice period requested by Plaintiffs); *Bigger v. Facebook, Inc.* 375 F. Supp. 3d 1007, 1025 (N.D. Ill. 2019) (Leinenweber, J.) (approving a sixty-day notice period in a nationwide collective); *Piazza v. New Albertsons, LP*, 2021 WL 365771, at *9 (N.D. Ill. Feb. 3, 2021) (approving sixty-day notice period for nationwide collective).

## IV. CONCLUSION

Based upon the foregoing facts, arguments, and authorities, Defendants Evergreen Packaging, LLC and Pactiv Evergreen, Inc. respectfully request that this Court deny Plaintiff's Motion for Conditional Certification, for Disclosure of Contact Information, and to Send Notices, and grant Defendants such other relief as may be just.