IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **ELANDER WOODALL, Individually and on Behalf of All Others Similarly Situated,** | |
| Plaintiff, | |
| v. | Case No.  1:23-CV-459 |
| **EVERGREEN PACKAGING, LLC AND PACTIV EVERGREEN, INC.,** | Honorable Steven C. Seeger |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF PARTIES' JOINT MOTION FOR APPROVAL OF FAIR LABOR STANDARDS ACT SETTLEMENT**

**I.      Introduction**

Named Plaintiff Elander Woodall, on behalf of herself and all others similarly situated ("Woodall" or "Named Plaintiff"), and Defendants Evergreen Packaging LLC and Pactiv Evergreen Inc. ("Defendants") (collectively "the Parties"), have reached a settlement in this lawsuit. The Settlement was the result of arm's-length negotiations, conducted by experienced counsel for all Parties, after exchanging extensive written discovery regarding the claimed allegations and defenses. The terms of the Settlement are reasonable, appropriate, and fair to all Parties, including the Settlement Collective Members.

After approval, all Settlement Collective Members will receive a Settlement Check in exchange for a limited release of all claims they have for unpaid overtime wages under the Fair Labor Standards Act and corresponding state law, arising out of their work as an Hourly-Paid Production Worker ("Production Worker") at Defendant Evergreen's Athens, Georgia and Malvern, Arkansas facilities between January 25, 2021, and the date of Approval by this Court.

For the reasons explained below, the Parties' Settlement is a fair and reasonable resolution

of a *bona fide* dispute between the Parties. As a result, the Parties respectfully request the Court

approve the Settlement Agreement (herein "Agreement"), attached hereto as **Exhibit 1**.

## II.        Facts and Summary of Negotiations

Defendant Evergreen is a nationwide provider of paper packaging solutions and operates

various facilities across the country, including facilities in Athens, Georgia and Malvern,

Arkansas. Plaintiff was employed as a Production Worker at the Athens, Georgia facility, which

produces and manufactures milk and juice cartons that are shipped all over the globe. The Athens

mill operates 24 hours a day, 5 days a week. The Malvern facility produces polypropylene trays

used in poultry packaging that are shipped directly to poultry distribution facilities and similarly

operates 24 hours a day, 5 days a week.

Plaintiff and the Settlement Collective Members are all current or former Production

Workers that worked at either the Athens or Malvern facilities. Production Workers are non-

exempt, hourly paid employees responsible for manufacturing tasks, which vary based on which

department they are in. Plaintiff represents an FLSA Collective of approximately 191 other

Production Workers employed by Defendant.  The Malvern portion of the Settlement Collective

is  limited to those who did not fully release all wage & hour claims in another pending settled

case entitled *Wallace v. Evergreen Packaging, LLC*, Case No. 4:22-cv-337-KGB, United States

District Court for the Eastern District of Arkansas ("*Wallace* litigation"). The Athens group of the

Settlement Collective has no such limitation.

Plaintiff alleged in this litigation that Defendants violated the Fair Labor Standards Act, 29

U.S.C.§§201, et seq. ("FLSA") by engaging in a "rounding practice" whereby hours worked by

employees allegedly were rounded down and "went unrecorded and uncompensated." [Dkt. 1, ¶¶

39-41]. Plaintiff alleged the following example: "If a production worker clocked in for 8 hours and

10 minutes, Defendants would round that worker's hours down to exactly 8 hours." [Dkt. 1 ¶ 40].

Plaintiff argued that because of the rounding practice, Plaintiff and other Production Workers were left uncompensated for time they worked over forty-hours per week. [Dkt., 1 ¶¶ 41-42]. Defendants denied all alleged wrongdoing. Defendants maintained throughout the case that all employees at both the Athens and Malvern facilities were never subject to a rounding practice. Rather, each facility utilized a seven-minute grace period, which allowed employees to punch-in a maximum of seven minutes early prior to the start of their shift. Employees performed no work during the grace period. Further, employees who punched in *more than* seven minutes prior to the start of their shift, were paid to the minute.

On January 19, 2024, the late Judge Leinenweber granted in part and denied in part Plaintiff's Motion for Conditional Certification and for Approval and Distribution of Notice. [Dkt. 46]. The Court conditionally certified a collective of all non-exempt Production Workers employed at the Athens, Georgia facility and those Production Workers at the Malvern, Arkansas facility who had not already opted into the *Wallace* litigation. Thereafter, a Court-approved notice and consent were sent to all members of the proposed collective by U.S. mail. Approximately 212 individuals filed consents to join after the notices were mailed. Of those individuals who filed consents to join, 21 individuals filed consent forms outside of the relevant statute of limitations period. Thus, a total of 191 individuals are properly encompassed within the terms of the Parties' Settlement Agreement.

During discovery, Defendants issued, and the Plaintiff answered, Defendants' written discovery requests. Similarly, Plaintiff propounded, and Defendants responded to, extensive written discovery requests. After completing written discovery, both Plaintiff and Defendants began to review their respective positions, and, at that time, counsel for both sides commenced initial talks to resolve this litigation.

3

In addition to discovery, Class Collective Counsel made a thorough and independent investigation of the facts and law relating to the allegations in the litigation, and in agreeing to the Settlement Agreement, Class Collective Counsel considered (i) the facts developed during litigation and settlement negotiations and the law applicable thereto; (ii) the attendant risks of continued litigation and the uncertainty of the outcome of the claims alleged against Defendants; and (iii) the desirability of consummating this Settlement Agreement for finality and resolution. As a result, Plaintiff determined that this matter should be resolved because continuing to litigate these issues would prolong litigation, consume a significant amount of time, generate significant additional expenses, and carry significant risk concerning any recovery on behalf of the Collective. Defendants similarly wished to avoid the risk, inconvenience and delay of continued litigation.

The Parties now present the Settlement Agreement to the Court for approval. The Settlement Agreement offers significant advantages over the continued prosecution of this case: Plaintiff and the Settlement Collective Members will receive significant financial compensation within weeks of the Court's Order entering Final Approval, and each Settlement Collective Member maintains the right to determine whether or not to deposit his/her settlement check, thereby releasing their claims for alleged unpaid wages against Defendants, its present and former parent companies, subsidiaries, and affiliates, or to forego the payment and maintain the right to pursue individual litigation on their own. The Parties agree that the terms of the proposed settlement, summarized below, are fair and reasonable and should be approved by this Court.

III.    **The Settlement**

A.    Summary of the Agreement

Under the Settlement Agreement and subject to approval by this Court, the Parties seek to certify a collective action under the FLSA for settlement purposes only and send notice and settlement checks to all Settlement Collective Members, as defined below; provide releases in

favor of Defendants; allow Plaintiff's counsel to separately seek approval of attorneys' fees and costs, which were negotiated separately from the amount to be paid to the Collective; and allow the Named Plaintiff to seek a Service Award.

B.      <u>Certification for Settlement Purposes Only</u>

The Parties ask the Court to certify, for settlement purposes only, a collective action pursuant to Section 216(b) of the FLSA. [1] The Settlement Collective Members, as defined below, would be provided notice and the opportunity to participate in the settlement:

The Parties ask the Court to certify a collective action pursuant to Section 216(b) of the FLSA. The group who would be provided notice and an opportunity to join this lawsuit and participate in the Settlement is composed of:

> The Named Plaintiff, and each and every individual who [timely] signed, dated, and filed an opt-in consent form with the Court to participate in the Lawsuit as an opt-in plaintiff and has a Qualifying Workweek during the Collective Period, and did not fully release all wage & hour claims in the case entitled *Wallace v. Evergreen Packaging*, *LLC*, Case No. 4:22-cv-337-KGB, United States District Court for the Eastern District of Arkansas.

The certification of a collective action under the FLSA for settlement purposes would allow the Parties to send a Court-approved Notice Packet to all of the Settlement Collective. (The Notice Packet is Exhibit A to the Settlement Agreement). Along with the Court-approved Notice, all Settlement Collective Members will receive a check they can endorse and cash to join the settlement. The Notice Packet explains that by signing and cashing the check, the individual is agreeing to participate in the settlement. If a Settlement Collective Member chooses not to cash their settlement check, then that individual loses no rights and is free to pursue their individual claim, if desired, as they see fit. Unlike a class action, where there are absent class members and a

---

[1] In so stipulating, Defendants do not waive, and instead expressly reserve, their right to challenge the propriety of certification of the FLSA collective in the event the Parties' proposed settlement is not approved by the Court.

class member may lose rights unless they opt-out, in a collective action settlement such as this one, individuals forfeit no rights unless they voluntarily choose to be part of the lawsuit and cash the check.

      C.      <u>Amount of the Settlement</u>

          1.      *Amount of Fund and Individual Awards*

As reflected in the Settlement Agreement, Defendants have agreed to create a fund of Ninety Thousand Dollars ($90,000.00) (defined in the Settlement Agreement as the "Gross Settlement Amount"). Out of the Gross Settlement Amount, Defendants agree to pay **all** Settlement Collective Members monies to compensate them for all allegedly owed but unpaid wages, including overtime. Included in the Gross Settlement Amount is also the Service and General Release Award to the Named Plaintiff, the Fee Award to Class Collective Counsel, which is subject to this Court's discretion, and the Settlement Administrator Fees

To calculate each Settlement Collective Member's share of the settlement, the Parties will first calculate the Net Member Payments by subtracting from the Gross Member Payments the following amounts: (i) Service Award to the Named Plaintiff, totaling $3,000.00; (ii) any award for attorneys' fees and costs, which shall be determined solely by this Court; (iii) Settlement Administrator costs; and (iv) all Minimum Payments owed to the Settlement Collective Members. Minimum Payment is defined in the Settlement Agreement as Fifty Dollars ($50.00). Each Settlement Collective Member's Net Wage and Liquidated Damages Payments is described in Paragraph 25 of the Settlement Agreement and includes a Minimum Payment to each Collective Member and payments based on a pro rata share of Qualifying Workweeks that Collective Members collectively worked as a Production Worker during the Collective Period. Qualifying Workweeks is defined in the Settlement Agreement as the number of workweeks that a Collective Member both: (i) worked as a Production Worker; and (ii) performed any work as a Production

Worker during the workweek. The average recovery for a Settlement Collective Member is approximately $219.00.

2.     *Service and General Release Award*

Defendants do not oppose Plaintiff's Counsel's request for approval of a Service and General Release Award totaling $3,000 to the Named Plaintiff as described in the Settlement Agreement and in more detail below. This Service and General Release Award is given for more than just a recognition of the Named Plaintiff's efforts on behalf of the Settlement Collective Members. It is also given in exchange for a general release of claims as to Defendants.

3.     *Release*

If the Agreement is approved, all Settlement Collective Members who voluntarily choose to accept this Settlement by timely signing, cashing, or depositing their Settlement Check will release all claims that relate to the alleged failure to pay all compensation for all hours worked, including claims under the FLSA and applicable state wage and hour laws and common laws, and any and all claims with respect to the time that the Settlement Collective Members were employed by Defendant Evergreen during the period of January 25, 2021 through the Effective Date of the Settlement Agreement. The consideration of the payments made by Defendants and the terms of the Settlement Agreement shall be in exchange for entry of the final judgment and dismissal with prejudice of the litigation and the release as set forth in the Settlement Agreement.

Because this is a settlement agreement under the FLSA, there are no absent class members. Consequently, any Settlement Collective Members who do not wish to participate, and therefore does not sign, cash, or deposit their check, will not release any claims, and will not be bound by the Settlement Agreement.

IV.     **Argument**

      A.     <u>A One-Step Approval Process for FLSA Settlements Is Appropriate Where There is no Rule 23 Class Sought</u>

Pursuant to the FLSA, claims for back wages and other damages arising under the FLSA may be settled or compromised with the approval of the District Court or Secretary of Labor. *See Brooklyn Savings Bank v. O'Neil,* 324 U.S. 67 (1945); *D.A. Schulte, Inc. v. Gangi,* 328 U.S. 108 (1946); *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-54 (11th Cir. 1982). Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Furman v. At Home Stores LLC,* No. 16-cv-8190, 2017 WL 1730995, at *1 (N.D. Ill. May 1, 2017).

In the Seventh Circuit and throughout the country, a one-step approval process is appropriate in FLSA opt-in settlements that do not include Rule 23 opt-out classes. *See, e.g., Prena v. BMO Fin. Corp.*, No. 15-C-09175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) ("One step is appropriate because this is an FLSA collective action, where collective members must affirmatively opt-in, in order to be bound by the settlement (including the settlement's release provision)."); *Roberts v. Apple Sauce, Inc.*, No. 3:12-CV-830-TLS, 2014 WL 4804252 (N.D. Ind. Sept. 25, 2014); *see also Bozak v. FedEx Ground Package Sys., Inc.*, No. 3:11-cv-00738-RNC, 2014 WL 3778211, at *9-10 (D. Conn. July 31, 2014) (approving FLSA notice providing notice of settlement terms and options facing class), 2014 U.S. Dist. LEXIS 106042 (D. Conn. July 31, 2014).

V.     **This Court Should Grant the Motion and Find the Agreement Fair and Reasonable**

      A.     <u>The Agreement Is Fair and Reasonable and Should Be Approved</u>

The Court should approve the Settlement Agreement because it is fair and reasonable.  To approve the Settlement, the Court should determine that the proposed settlement reflects a

reasonable compromise over contested issues. *Furman v. At Home Stores LLC, No. 16-cv-8190,* 2017 WL 1730995, at *1 (N.D. Ill. May 1, 2017). Courts approve wage and hour settlements reached as a result of contested litigation to resolve *bona fide* disputes. *See, e.g., Lynn's Food Stores*, 679 F.2d at 1355; *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, No. 16 Civ. 3571, 2016 WL 5109196, at *1 (N.D. Ill. Sept. 16, 2016). If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores*, 679 F.2d at 1354.

Here, the settlement was negotiated at arm's-length by experienced counsel; the amount Defendants have agreed to pay the Settlement Collective Members is fair and adequate; there is a significant risk to the Collective of an adverse judgment on the merits or whether the case should proceed as a collective action; the Collective will receive adequate notice sufficient for each potential opt-in to assess their rights; the members of the Collective are sufficiently similar for *final* certification for settlement purposes. This settlement is particularly fair and reasonable because, unlike a class action settlement, only those individuals who voluntarily choose to become part of the lawsuit, and thus to participate in the settlement, are bound by it. As the parties explain more fully below, any potential class member who thinks the settlement is unfair to him or her is not obligated to participate in the settlement and is not bound by it.

      B.     <u>Settlement is the Product of Arm's Length Negotiations of a Bona Fide Dispute</u>

The settlement in this case is the result of arm's-length negotiations, involving the exchange of class/collective discovery and extensive settlement discussions between counsel for the Parties. Additionally, Plaintiff recognizes the expense and length of the proceedings necessary to continue the litigation against Defendants through trial and through any possible appeals. Plaintiff has also considered the uncertainty and risk of the outcome of further litigation, the defenses raised by Defendants, and the difficulties and delays inherent in litigation.

Here, there can be no dispute that a clear *bona fide* dispute exists which the Settlement Agreement would resolve. Defendants have denied Plaintiff's claims entirely, arguing that, even if the facts are as Plaintiff alleges, Defendants' actions were not violative of the FLSA and do not impose any liability on Defendants. Specifically, with regard to Plaintiff's rounding claims, Plaintiff alleges that Defendants rounded hours of Plaintiff and other Production Workers in Defendant Evergreen's favor by rounding down in approximately fifteen-minute increments. Defendants deny these allegations and deny that they undercompensated Production Workers. Indeed, Defendants maintain that all employees at the Athens and Malvern facilities were subject only to a seven-minute grace period, which allowed employees to punch-in a maximum of seven minutes early prior to the start of their shift. Employees performed no work during the grace period. Further, employees who punched in *more than* seven minutes prior to the start of their shift, were paid to the minute.

Undisputedly, significant complicated factual and legal questions therefore exist which would require intensive discovery and litigation, and potentially expert testimony, such as, *inter alia*, (i) factual analysis of any improper impact on employee compensation attributable to Defendants' rounding practices; (ii) whether Defendants' rounding practices in fact violated the FLSA law; and (iii) how damages would be determined. The settlement would resolve all of these *bona fide* disputes.

In light of *bona fide* issues at stake, the uncertainty of the outcome of any potential litigation, the benefits to the Parties (including a significant monetary payment to the Settlement Collective Members), the experience of the Class Collective Counsel, the information shared between the parties, there is substantial risk of any recovery for the Settlement Collective. Hence, the Settlement is a fair and reasonable resolution of a bona fide dispute and should be approved.

10

C.     The Amount to the Class is Fair

Not only is the settlement the product of an adversarial, non-collusive process, but the amount to be paid to the Collective is fair and reasonable. First, all Settlement Collective Members will receive a minimum payment of $50.00. Second, the average Settlement Check amount is $219.00. Thus, the vast majority of the Collective Members will receive more than $200.00 for their release of claims that were pled or could have been pled in this case. Further, Members would receive substantially more if they worked most or all of the Collective Period. Third, the amount going to each Collective Member was determined by applying a Minimum Payment and then applying a formula that took into consideration the work weeks of each Production Worker during the Collective Period. A Production Worker who worked more weeks during this period was allocated a proportionally higher share of the settlement than one who worked fewer work weeks during the period.

These distribution methods are fully detailed in the Settlement Agreement and in the Notice Packet that will be sent to each Settlement Collective Member. Finally, only those who voluntarily agree to join the settlement by timely signing and cash the check would be bound by it. As stated in the Notice, any Production Worker who has questions about the settlement may contact the Settlement Administrator and/or Plaintiffs' counsel. More importantly, any Production Worker who disagrees with the allocation or with any of the terms of the Settlement Agreement does not have to join the settlement, in which case they would not give up any rights, including not releasing any claims.

D.     Due Process Considerations

Section 216(b) collective actions such as this do not implicate the same due process concerns as Rule 23 class actions because they require workers to voluntarily opt-in to the litigation. *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 771 (7th Cir. 2013); *Genesis*

11

*Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA."). Under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date." *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989). Accordingly, courts do not apply the exacting standards for approval of a class action settlement under Rule 23 to FLSA settlements. *See, e.g., Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982) (stating that due process concerns present in Rule 23 class actions are not present in FLSA collective actions). There is no need to require that the settlement provide for opt-outs or objections where individuals are not part of the settlement unless they decide to participate. *Prena*, 2015 WL 2344949 at *1; *Woods*, 686 F.2d at 580.

In this case, each Settlement Collective Member only has to timely sign and cash the check enclosed in the Notice Packet. And only if they independently decide to cash the check will they be bound by the settlement. Any individual who chooses not to cash the Settlement Check is not bound in any way by the settlement or any release. That significant difference from a class action settlement weigh in favor of final approval since the individual class members will have the opportunity to make an informed decision about whether to join the settlement and will not be bound by it unless they affirmatively choose to do so.

E.    The Service and General Release Award to Named Plaintiff Should Be Approved as Fair and Reasonable

In general, courts may make separate awards to class representatives in recognition of their risks taken, time expended, and benefits to the class. *See Espenscheid v. Direct Sat USA, LLC*, 688 F.3d 872, 876-77 (7th Cir. 2012). Named plaintiffs in class and collective lawsuits play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. "Because

12

a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). The Parties have agreed to a cumulative Service Award of $3,000.00 to Named Plaintiff.

The Service and General Release Award consists of the time and effort Plaintiff expended in assisting the prosecution of this litigation, which includes the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by Plaintiff. *See, e.g., Espenscheid,* 688 F.3d at 876-77; *Cook*, 142 F.3d at 1016. Named Plaintiff's role in this litigation was crucial. Plaintiff sacrificed her time to prosecute this lawsuit on behalf of fellow current and former Production Workers, which included numerous communications with counsel and detailed review of documents and information relating to the claims in this case that allowed counsel to understand the systems in use by Defendants and whether such practices were potentially violative of the FLSA. Particularly in an employment context, courts recognize that service awards are appropriate because they "promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits." *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 867 (8th Cir. 2017); *see Briggs v. PNC Fin. Servs. Grp., Inc.*, No. 1:15-CV-10447, 2016 WL 7018566, at *3 (N.D. Ill. Nov. 29, 2016) (order approving service awards of $12,500 each to named plaintiff); *Koszyk*, 2016 WL 5109196 at *2 (order approving service awards of $10,000 each to named plaintiff); *Castillo v. Noodles & Co.*, No. 16-CV-03036, 2016 WL 7451626, at *2 (N.D. Ill. Dec. 23, 2016) (same).

F.     The Proposed Notice is Informative and Reasonable.

Under relevant FLSA case law, the notice must be "timely, accurate, and informative." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989). As demonstrated in Exhibit A to the Settlement Agreement, the Parties' proposed notice meets these requirements, as it is

13

"reasonable," "accurate and informative" and will be "timely" provided. Specifically, the Notice Packet informs Settlement Collective Members as to the nature of the suit, why they are receiving the Notice, the terms of the Settlement and how it was reached, the benefits and consequences of the Settlement and an estimate of their personal share of the Settlement.

Further, if the Court approves the settlement and the proposed form of notice, the Settlement Administrator will take all reasonable steps to ensure the accurate and complete distribution of the notices.

## VI.    Conclusion

The Parties have agreed to settle all claims in this dispute through execution of the Settlement Agreement. (*See* Exhibit 1). While Defendants do not admit liability or wrongdoing, all Parties agree and represent that, in accordance with the terms of the Settlement Agreement, Plaintiff and the Settlement Collective Members are receiving a reasonable and satisfactory recovery.  Thus, the Parties respectfully request that the Court approve the Settlement, retain jurisdiction to oversee and enforce the Settlement Agreement, and issue an Order dismissing this action with prejudice and directing the entry of final judgment.

Respectfully submitted,                    Respectfully submitted,

**Elander Woodall**                        **Evergreen Packaging LLC and Pactiv Evergreen Inc.**


*/s/ Josh Sanford*                         */s/ John A. Ybarra*
One of Her Attorneys                       One of Its Attorneys

Josh Sanford                               John A. Ybarra, Bar No. 6196983
josh@sanfordlawfirm.com                    jybarra@littler.com
Sean Short                                 Shanthi V. Gaur, Bar No. 6224996
sean@sanfordlawfirm.com                    sgaur@littler.com
SANFORD LAW FIRM, PLLC                     Matthew J. Ruza, Bar No. 6321424
Kirkpatrick Plaza                          mruza@littler.com
10800 Financial Centre Pkwy, Suite 510     LITTLER MENDELSON, P.C.
Little Rock, Arkansas 72211                321 North Clark Street, Suite 1100
                                           Chicago, IL  60654


Dated: April 21, 2025

4932-2086-7638