# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| **ELANDER WOODALL, Individually and on Behalf of All Others Similarly Situated,** | |
| Plaintiff, | |
| v. | Case No. 1:23-CV-459 |
| **EVERGREEN PACKAGING, LLC AND PACTIV EVERGREEN, INC.,** | Honorable Steven C. Seeger |
| Defendants. | |

## COLLECTIVE SETTLEMENT AGREEMENT FOR ALL CLAIMS

1.      This Settlement Agreement and Release (the "Agreement") is entered into between Named Plaintiff Elander Woodall individually and on behalf of all Settlement Collective Members (as defined below) and Evergreen Packaging LLC and Pactiv Evergreen Inc. ("Defendants"), (collectively, the "Parties"), subject to the approval of the Court.

## RECITALS

2.      Named Plaintiff individually and on behalf of others, filed Litigation (as defined below) asserting that Defendants failed to pay proper overtime compensation under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA").

3.       As a result of the Parties' arms'-length negotiations, the Parties have agreed to settle this Litigation (as defined below) according to the terms of this Agreement.

4.       Upon a motion filed by Named Plaintiff, on January 19, 2024, the Court conditionally certified a class of all Hourly-Paid Production Workers at Defendants' Athens, Georgia and Malvern, Arkansas facilities who were employed by Defendants since January 25, 2021. Thereafter, a court-approved notice and consent were sent to all members of the proposed collective by mail. Approximately 212 individuals filed consents to join after the notices were mailed. Of those individuals who filed consents to join, 21 individuals filed consent forms outside of the relevant statute of limitations period. Thus, a total of 191 individuals, defined below as Settlement Collective Members properly are encompassed within the terms of this Settlement Agreement.

5.      Class Collective Counsel (as defined below) has made a thorough and independent investigation of the facts and law relating to the allegations in the Litigation.  In agreeing to this Agreement, Class Collective Counsel has considered: (a) the facts developed

**Error! Unknown document property name.**

during the Parties' Litigation and settlement negotiations and the law applicable thereto; (b) the attendant risks of continued litigation and the uncertainty of the outcome of the claims alleged against Defendants; and (c) the desirability of consummating this Agreement according to the terms of the Agreement. Named Plaintiff Elander Woodall also concluded that the terms of this Settlement are fair, reasonable, and adequate, and that it is in the best interests of the Named Plaintiff and all Settlement Collective Members to settle their claims against Defendants pursuant to the terms set forth herein.

6.      Defendants deny the allegations in this Litigation and deny that they engaged in any wrongdoing or violation of law. Defendants are entering into this Agreement because it will eliminate the burden, risk, and expense of further litigation. Neither this Agreement nor any document referred to herein, nor any action taken to carry out this Agreement, may be admissible or used in any way as an admission, concession, or indication by or against Defendants of any fault, wrongdoing, or liability whatsoever, including any concession that certification of a class other than for purposes of this Settlement would be appropriate in the Litigation or any other case.

7.      The Parties recognize that Court approval of this Agreement is required to effectuate the Settlement, and that the Settlement will not become operative until the Court grants approval of the Agreement and the Settlement becomes effective.

8.      Should this Settlement not become final, this Agreement shall have no bearing on, and shall not be admissible in connection with any further proceedings in this Litigation (as defined below) or in any other proceeding.

9.      In consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by each party to the other, IT IS HEREBY AGREED, by and between the undersigned, subject to the approval of the Court and the other conditions set forth herein, that the claims of the Named Plaintiff and the Settlement Collective Members (as defined below) against Defendants shall be settled, compromised, and dismissed, on the merits and with prejudice, and that the Released Claims (as defined below) shall be finally and fully compromised, settled, and dismissed as to the Releasees (as defined below), in the manner and upon the terms and conditions set forth below.

## DEFINITIONS

10.     The following terms used in this Agreement shall have the meanings ascribed to them below:

a.      "**Acceptance Period**" means the 90 Day period after the mailing of the Notice Packet during which a Settlement Collective Member may sign and cash a Settlement Check before the Settlement Check shall be non-negotiable.

b.      "**Claims Administrator**" means RG2 Claims Administration LLC, the Claims Administrator chosen by Defendants, and which is compensated from the Gross Settlement Amount in the amount of $5,000.00 payable to the Claims Administrator. The Parties agree to

cooperate in the settlement administration process and to make all reasonable efforts to control and minimize the costs incurred in the administration of the Settlement.

c.       "**Class Collective Counsel**" means Josh Sanford, Sean Short, and Sanford Law Firm, PLLC, located at Kirkpatrick Plaza, 10800 Financial Centre Parkway, Suite 510, Little Rock, Arkansas 72211.

d.       "**Collective Period**" means the time period from January 25, 2021, up to and including the date the Order Granting Approval of Settlement is entered.

e.       "**Complaint**" means the Complaint filed on January 25, 2023, by the Named Plaintiff in this Litigation, a copy of which is attached to this Agreement as **Exhibit C**.

f.       "**Court**" means the United States District Court for the Northern District of Illinois, Eastern Division.

g.       "**Day**" means, for purposes of this Settlement only, calendar days from the Effective Date. If a relevant date falls on a Saturday, Sunday, or legal holiday, the action triggered under the terms of this Settlement shall commence on the following business day.

h.       "**Defendants' Counsel**" means John A. Ybarra, Matthew J. Ruza, and Yara Mroueh of Littler Mendelson, P.C.

i.       "**Defendants**" means Evergreen Packaging LLC, Pactiv Evergreen Inc., and their present and former parent companies, subsidiaries, and affiliates who employed and/or now employ Settlement Collective Members.

j.       "**Effective Date**" is the date as defined in Paragraph 12 below.

k.       "**Employer Payroll Taxes**" means Defendants' share of any taxes that they are required to pay arising out of the payment of any monies to Settlement Collective Members as part of this Settlement, including FICA, FUTA, and SUTA obligations.

l.       "**Fee Award**" means the award of attorneys' fees, costs, and expenses to be paid to Class Collective Counsel for the services they provided to the individuals in the Litigation. Class Collective Counsel will move the Court for a Fee Award of $42,000.00 from the Gross Settlement Amount. The Fee Award to Class Collective Counsel will be included within the Gross Settlement Amount. Under no circumstances shall Defendants pay Class Collective Counsel more than the requested $42,000.00 if it is approved by the Court, as the Fee Award.

m.       "**Gross Settlement Amount**" equals a maximum amount of Ninety Thousand Dollars ($90,000.00). The Gross Settlement Amount is the maximum total gross amount that Defendants agree to pay to fully resolve and settle all of the claims now asserted or that could have been asserted in this Litigation, including any claim for attorneys' fees and any costs. The Gross Settlement Amount is the sum of the negotiated amount of the Gross Member Payments, the Service Award, Claims Administrator Fees, and the Fee Award. Under no circumstances will Defendants be required to pay more than the Gross Settlement Amount pursuant to this Settlement, other than Employer Payroll Taxes.

Page **3** of **17**

**Error! Unknown document property name.**

n.     "**Gross Member Payments**" which is entirely payable from the Gross Settlement Amount, means the maximum total of $45,000.00 that Defendants will pay for wages and liquidated damages to the Settlement Collective Members. Should Class Collective Counsel's Fee Award be reduced by the Court, the remaining balance left over from the Gross Settlement Amount not awarded to Class Collective Counsel in the form of a Fee Award shall be included in the Gross Member Payments.

o.     "**Litigation**" means the lawsuit that Plaintiff filed against Defendants on January 25, 2023, styled Case No. 1:23-cv-459, *Elander Woodall, Individually and on Behalf of All Others Similarly Situated v. Evergreen Packaging LLC, and Pactiv Evergreen Inc.,* in the United States District Court for the Northern District of Illinois, Eastern Division.

p.     "**Named Plaintiff**" means Elander Woodall, who served as the Named Plaintiff in this Lawsuit.

q.     "**Net Member Payments**" means Gross Member Payments less the approved Service Award, Fee Award, and all Minimum Payments (as defined in Paragraph 25).

r.     "**Notice Packet**" means the document titled Notice of Settlement, to be approved by the Court in a form substantially similar to the Notice attached hereto as **Exhibit A,** the "Settlement Check" to each Settlement Collective Member as defined in Paragraph 16 below, and the Service Award to the Named Plaintiff.

s.     "**Order Granting Approval of Settlement**" or "**Approval Order**" means an Order from the Court (i) asserting jurisdiction over the claims in the Litigation and the Settlement; (ii) granting final judgment pursuant to the terms provided herein (or as the same may be modified by subsequent mutual agreement, in writing, of the Parties); (iii) adjudging the terms of the Agreement to be a fair and reasonable resolution of a bona fide dispute, and directing consummation of its terms and provisions, including issuance of payment to the Settlement Collective Members; (iv) dismissing the Litigation on the merits and with prejudice and permanently enjoining all Settlement Collective Members from prosecuting against Defendants and the Releasees (as defined in Paragraph 10(y)) any Released Claims (as defined in Paragraph 15) and (v) retaining jurisdiction to enforce the Agreement.

t.     "**Parties**" means the Named Plaintiff, the Settlement Collective Members, and Defendants.

u.     "**Production Worker**" means all Settlement Collective Members who were employed in one or more of those positions during the Collective Period.

v.     "**Qualified Settlement Fund**" or "**QSF**" means an interest-bearing account held by the Claims Administrator, to effectuate the terms of the Agreement and the orders of the Court, to be treated for federal income tax purposes pursuant to Treas. Reg. § 1.46B-1. The Claims Administrator shall establish the QSF within three (3) Days after the Effective Date. The Claims Administrator shall be responsible for establishing, administering, and otherwise operating the QSF, including preparing and filing federal and state tax returns with applicable

**Error! Unknown document property name.**

Docusign Envelope ID: 24C8AAA5-E43D-48F5-86AA-3D07D4294184

government tax authorities, and remitting tax withholdings to the applicable government tax authorities.

w.    **"Qualifying Workweeks"** means the number of workweeks during the Collective Period that a Settlement Collective Member both: (i) worked as a Production Worker; and (ii) performed any work as a Production Worker during the workweek.

x.    **"Releasee"** means Defendants Evergreen Packaging LLC and Pactiv Evergreen Inc., and their parents, subsidiaries, related entities (specifically including but not limited to Pactiv Evergreen Group Holdings Inc.,), and affiliates (including their directors, officers, shareholders, owners, employees, attorneys, partners, and agents, past, present and future), and each of their respective predecessors, successors, transferees, and assigns.

y.    **"Service Award"** means the award which shall be paid to the Named Plaintiff, as part of her Settlement Check, in recognition of her time and efforts on behalf of the Settlement Collective Members, and also in recognition of her broader release of claims as set forth in Paragraph 18 herein.

z.    **"Settlement"** means the terms of this Agreement reached between the Parties to settle the claims in the Litigation.

aa.    **"Settlement Check"** means the check issued to each Settlement Collective Member for their proportionate share of the Net Member Payments. The Settlement Check will consist of 50% Net Wage Payments, as defined in Paragraph 25(a) and 50% Liquidated Damages, as defined in Paragraph 25(b) below.

bb.    **"Settlement Collective Member"** means each and every individual who signed, dated, and filed an opt-in consent form with the Court to participate in the Lawsuit as an opt-in plaintiff and has a Qualifying Workweek during the Collective Period, and did not fully release all wage & hour claims in the case entitled *Wallace v. Evergreen Packaging*, *LLC*, Case No. 4:22-cv-337-KGB, United States District Court for the Eastern District of Arkansas, including the Named Plaintiff.

## SETTLEMENT TERMS

11.    **Final Settlement.** It is the desire and intention of the Parties that this Agreement shall, for the Settlement Collective Members, fully, finally, and forever completely settle, compromise, release, and discharge any and all Released Claims (as defined in Paragraph 15).

12.    **Effective Date**. The Effective Date shall be thirty-three (33) Days from the date of the entry of the Court's Approval Order. However, if an appeal is filed within the Appeal Period, then the Effective Date shall be the latest of: (i) the date of final affirmance of the Court's Approval Order; (ii) the expiration of the time for a petition for writ of certiorari to review the Approval Order if affirmed and, if certiorari is granted, the date of final affirmance of the Approval Order following review pursuant to that grant; or (iii) the date of final dismissal of any appeal from the Approval Order or the final dismissal of any proceeding on certiorari to review the Approval Order that has the effect of confirming the Approval Order. If there is no

Page **5** of 17

**Error! Unknown document property name.**

Docusign Envelope ID: 24C8AAA5-E43D-48F5-86AA-3D07D4294184

Effective Date: (i) the Agreement shall have no force and effect, and no party shall be bound by any of its terms; (ii) Defendants shall have no obligation to make any payments to the Settlement Collective Members, inclusive of the Named Plaintiff or Class Collective Counsel; and (iii) the Agreement and all negotiations, statements, proceedings, and data relating thereto shall be protected by Federal Rule of Evidence Rule 408 and shall be without prejudice to the rights of any of the Parties, all of whom shall be restored to their respective positions in the Litigation as of the date the stay of this Litigation was ordered by the Court, which was in place while the Parties pursued mediation and arms'-length negotiations. In such event, the Parties shall work cooperatively to attempt to resolve any issues that the Court has raised regarding the Agreement so that the Agreement gains the Court's approval, or alternatively, effectuate their intent to resume Litigation. If the issues cannot be resolved to the satisfaction of the Court and the Parties, then the Parties will withdraw the petition for approval and seek approval first from the Court.

13. **Fair and Reasonable Resolution of a _Bona Fide_ Dispute.** Defendants agree to pay the Gross Settlement Amount to fund and satisfy all of their settlement obligations in the Litigation. Payment by Defendants pursuant to this Agreement shall settle all pending issues between the Parties under the Settlement as set forth herein. Any payments made to the Settlement Collective Members under this Settlement shall not be construed as compensation for purposes of determining eligibility for unemployment compensation or any benefits offered by Defendants, including health and welfare benefits.

14. **Motion for Approval of FLSA Collective Action Settlement and Authorization of Notice.** Within twenty-eight (28) days after the execution of this Settlement Agreement, the Parties shall file a Joint Motion for Approval of FLSA Collective Action Settlement ("Approval Motion"). Class Collective Counsel will separately file their petition for fees and costs with the Court twenty-eight (28) days after execution of this Agreement. With the Approval Motion, the Parties will file this Agreement and Exhibits, and the proposed Approval Order.

## RELEASE

15. **Release of Claims by Settlement Collective Members.** Upon signing, depositing, or cashing their Settlement Check, the Settlement Collective Members shall individually release the Releasees from any and all state, local, or federal claims, obligations, demands, actions, rights, causes of action, and liabilities, whether known or unknown, against Releasees for any and all wage and hour claims that were or could have been asserted based on the facts set forth in the Complaint, including but not limited to claims for alleged unpaid wages and overtime wages, liquidated or other damages, unpaid costs, penalties (including late payment penalties), premium pay, interest, attorneys' fees, litigation costs, restitution, or other compensation and relief for the failure to properly pay such to Plaintiffs, arising under the FLSA or any other federal, state, or local wage-related law with respect to the time that they were employed by Defendants during the period of January 25, 2021 through the Order granting final approval of this Settlement. The consideration of the payments made by Defendants and the terms described herein shall be in exchange for entry of the final judgment and dismissal with prejudice of the Litigation and the release of the Releasees and attorneys as set forth above.

**Error! Unknown document property name.**

a.      The releases pursuant to this Agreement do not include any claim that cannot be released by private agreements. Moreover, nothing in this Agreement prohibits or prevents a Settlement Collective Member from filing a charge with or participating, testifying, or assisting in any investigation, hearing, whistleblower proceeding or other proceeding before any federal, state, or local government agency, including but not limited to the Equal Employment Opportunity Commission, the Securities and Exchange Commission, or the National Labor Relations Board. Nor does anything in this Agreement preclude, prohibit, or otherwise limit, in any way, a Settlement Collective Member's rights and abilities to contact, communicate with, report matters to, or otherwise participate in any whistleblower program administered by any such agencies. This release does not apply to any Settlement Collective Member benefit, right, claim, demand, complaint or cause of action under 29 U.S.C. 1132(a)(1)(B) or benefits accrued and under any employee benefit plan.

16.     **Settlement Check.**   On the reverse side of each Settlement Check, above the space for endorsement, will be printed the following settlement and release language:

By negotiating and cashing this check: (1) I agree to be bound by the Settlement Agreement and Release reached in *Elander Woodall, Individually and on Behalf of All Others Similarly Situated vs. Evergreen Packaging LLC, and Pactiv Evergreen Inc.,* in the United States District Court for the Northern District of Illinois, Eastern Division, Case No. 1:23-cv-459 ("the Litigation"); and (2) I release any and all wage and hour claims for the period from January 25, 2021 to [the date of the Order Granting Final Approval of the Settlement] that were brought or could have been brought in the Litigation against Evergreen Packaging LLC and/or Pactiv Evergreen Inc., and each of their respective parents, subsidiaries, related entities, and affiliates (including their directors, officers, shareholders, owners, employees, attorneys, partners, and agents, past, present and future), and each of their respective predecessors, successors, transferees, and assigns, under the Fair Labor Standards Act and/or any federal or state wage and hour statutory or common law.

17.     Each Settlement Check will also bear a legend directing the payer's bank to only accept the check for payment if: (a) the Settlement Check is endorsed by the payee; and (b) the language referred to in Paragraph 16, or any part of it, has not been altered or deleted.

18.     **General Release by Named Plaintiff.** In further consideration for payment and acceptance of a Service Award, the Named Plaintiff, on her own behalf and on behalf of her successors, assigns, agents, heirs and attorneys, releases and forever discharges the Releasees from and for all actions, causes of action, suits, controversies, claims and demands whatsoever which she now has, or ever has had, known or unknown, arising from any matter whatsoever, at the present time or at any time prior to the date of execution of this Agreement, including, but not limited to: (1) any and all wage and hour FLSA claims, known or unknown, contingent or accrued, against Releasees, their parent or subsidiary corporations and all agents thereof, arising under the FLSA which arise from the claims in, or which could have been pleaded in, the operative Complaint in the Lawsuit herein upon approval of the settlement by the Court and from any and all FLSA debts, liabilities, penalties, demands, obligations, guarantees, costs, expenses,

**Error! Unknown document property name.**

Docusign Envelope ID: 24C8AAA5-E43D-48F5-86AA-3D07D4294184

attorneys' fees, and damages for the alleged wage and hour violations under the FLSA; (2) any and all claims under Title VII of the Civil Rights Act of 1964, The Family And Medical Leave Act, the Rehabilitation Act of 1973, the Civil Rights Act of 1866, the Americans with Disabilities Act, the Civil Rights Act of 1991, Employee Retirement Income Security Act, the Older Workers Benefit Protection Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Worker Adjustment and Retraining Notification Act of 1988, the Genetic Information Nondiscrimination Act of 2008, the Fair Debt Collection Practices Act, the Equal Pay Act of 1963, any statute, law, order, ordinance, regulation or enactment of any type, including any state wage and hour laws or enactments, from Illinois, Georgia or Arkansas; (3) any and all claims for breach of an express or implied contract, including, but not limited to, retaliatory discharge, wrongful discharge and/or any other tort or common law cause of action; (4) any and all claims for breach of public policy or related matters, any and all claims for breach of any covenant of good faith and fair dealing, any and all claims of defamation, libel or slander, any and all claims of intentional infliction of emotional distress; (5) any and all claims for attorneys' fees or costs; and (6) any other claims of any kind, except as expressly excluded elsewhere in this Agreement. The Named Plaintiff and her counsel acknowledge that by signing this Agreement, and Named Plaintiff signing her Settlement Check, the Named Plaintiff agrees to be bound to this general release.

19.    **Waiver of Age Discrimination/Retaliation Claims and Revocation for Named Plaintiff.** As to the waiver of any and all potential age discrimination and/or retaliation claims under the Age Discrimination in Employment Act ("ADEA"), the Named Plaintiff further understands and acknowledges that she has seven (7) calendar days following the execution of this Agreement to revoke the release and Released Claims contained herein to waive potential age discrimination and/or retaliation claims under the ADEA. The Named Plaintiff acknowledges that the portion of the release and Released Claims contained herein that waives such potential age discrimination and/or retaliation claims shall not become effective or enforceable until the revocation period has expired, and she has not exercised her right to revoke. The Named Plaintiff further understands that in order to revoke the waiver of age discrimination and/or retaliation claims under the ADEA contained in the Released Claims, she or her attorney must deliver in a written and signed statement of revocation to John A. Ybarra, Esq., Littler Mendelson, P.C., 321 N. Clark St. Suite 1100, Chicago, IL 60654; or (b) e-mail the revocation to Matthew J. Ruza at mruza@littler.com within seven (7) calendar days following her execution of this Agreement. In either case, the Named Plaintiff agrees to keep written documentation proving that she revoked this Release contained in this Paragraph, either by keeping the documents signed by a representative of Littler Mendelson, P.C. attesting to the delivery of the revocation, or other verification that the e-mail was, in fact, received by Littler Mendelson, P.C. If such revocation of the release and waiver of potential age discrimination and/or retaliation claims occurs, the consideration for the Service Award will be reduced by fifty (50%) percent. The remaining provisions of the Released Claims contained here will remain in full force and effect.

    a.    The Named Plaintiff understands that once she signs below, this Agreement will become a legally enforceable agreement under which she will be giving up rights and claims she may have, on the terms stated in this Agreement.

**Error! Unknown document property name.**

Docusign Envelope ID: 24C8AAA5-E43D-4665-86AA-3D07D4294184

    b.   The Named Plaintiff has been given the opportunity to consult with an attorney prior to execution of this Agreement. The Named Plaintiff acknowledges that she has consulted with her attorney(s) and signs this Agreement knowingly, freely and voluntarily.

    c.   Notwithstanding the foregoing provisions, the Named Plaintiff does not release or waive: (i) any claim that she could make for unemployment compensation or workers' compensation benefits; (ii) any rights or claims that cannot be released as a matter of law pursuant to this Agreement and/or the Approval Order; and/or (iii) any rights or claims that may arise after the date she signs this Agreement.

    d.   Nothing in this Agreement prohibits or prevents the Named Plaintiff from filing a charge with or participating, testifying, or assisting in any investigation, hearing, whistleblower proceeding or other proceeding before any federal, state, or local government agency, including but not limited to the Equal Employment Opportunity Commission, the Securities and Exchange Commission, or the National Labor Relations Board. Nor does anything in this Agreement preclude, prohibit, or otherwise limit, in any way, the Named Plaintiff's rights and abilities to contact, communicate with, report matters to, or otherwise participate in any whistleblower program administered by any such agencies.

## NO PUBLIC COMMENT

    20.    Class Collective Counsel and Named Plaintiff shall not make public comments, communicate with the media, or advertise about the Litigation or Settlement, unless legally required to do so. This includes social networking sites, including but not limited to Facebook, LinkedIn, and Instagram; to any microblogging sites, including but not limited to Twitter/X; to any personal or public website or blog; video sharing or hosting websites, including but not limited to YouTube and TikTok; and from e-mailing to any distribution list or list-serve. This includes sharing statements or information under the pretense of being "anonymous."

## SETTLEMENT FUND DISTRIBUTION

    21.    **Funding of Settlement.** Within twenty-one (21) Days after the Effective Date, Defendants will deposit the Gross Settlement Amount in the Qualified Settlement Fund ("QSF") established by the Claims Administrator. All disbursements shall be made from the QSF. The Claims Administrator shall be the only entity authorized to make withdrawals or payments from the QSF.

    22.    **Payments**. Subject to the Court's Approval Order, the following amounts shall be paid by the Claims Administrator from the Gross Settlement Amount as set forth below:

    a.   **Service Award to Named Plaintiff.** Subject to the Court's approval, the Service Award shall be paid to the Named Plaintiff as part of her Settlement Check, in recognition of her time and efforts on behalf of the Settlement Collective Members, and also in recognition of their broader release of claims as set forth above in Paragraph 18.

**Error! Unknown document property name.**

b. **Attorneys' Fees Award.** Subject to the Court's approval, Class Collective Counsel may request a total Fee Award of $42,000.00, which was separately negotiated after the Parties reached an agreement on the Gross Member Payments enumerated in Paragraph 10(n) above along with other terms. Class Collective Counsel shall file a petition for Attorneys' Fees and Costs requesting their Fee Award. Defendants do not oppose Class Collective Counsel's request for a Fee Award in the amount of $42,000.00. Class Collective Counsel's request for a Fee Award is a matter between Class Collective Counsel and the Court, to be addressed by the Court and subject to the Court's discretion, approval and determination. Further, in the event that the Court does not approve Class Collective Counsel's Fee Award, the Parties agree that the Court's determinations with respect to Class Collective Counsel's fees will not otherwise affect the terms of this Agreement in any way. Any portion of the Fee Award that is not approved by the Court will revert to the Gross Member Payments for the benefit of the Settlement Collective Members. The Fee Award paid by Defendants pursuant to this Agreement shall constitute full satisfaction of Defendants' obligations to pay amounts to any person, attorney, or law firm, for attorneys' fees, expenses, and costs in the Litigation on behalf of Plaintiffs, and shall relieve Defendants from any other claims or liability to any other attorney or law firm for any attorneys' fees, expenses, or costs to which any of them may claim to be entitled on behalf of any Plaintiff. An IRS Form 1099 shall be provided to Class Collective Counsel for the payments made to Class Collective Counsel. Upon Court approval of Class Collective Counsel's Fee Award, the Claims Administrator shall distribute the Court approved Fee Award within thirty (30) Days of the Effective Date. Class Collective Counsel shall be solely and legally responsible to pay any and all applicable taxes on the payment made to its firm.

c. **Settlement Checks.** The Claims Administrator shall distribute Settlement Checks to the Settlement Collective Members as set forth below in Paragraph 25.

d. **Payroll Taxes**. The Claims Administrator shall pay the appropriate federal and state taxing authorities for both employee-side payroll deductions from Settlement Collective Member Settlement Checks, which shall be calculated in accordance with Paragraph 25 as set forth below. The Claims Administrator shall also provide Defendants with a separate certification, which shall state that the appropriate taxing authorities described in this Paragraph have been properly paid pursuant to the terms of this Agreement.

e. **No Claim Based Upon Distributions or Payments in Accordance with this Settlement Agreement.** No person shall have any claim against Defendants, Class Collective Counsel, Defendants' Counsel, or the Claims Administrator based on distributions or payments made in accordance with this Agreement.

23. In consideration for settlement of the Litigation and release of all Released Claims, each Settlement Collective Member shall receive a Settlement Check calculated pursuant to Paragraph 25. As part of the Claims Administrator's duties in effectuating the Settlement, Defendants' Counsel shall provide the Claims Administrator a list, in Microsoft Excel format,

**Error! Unknown document property name.**

which includes for each Settlement Collective Member: their name; last known address; last known email address; last known telephone number; location(s) worked; total number of Qualifying Workweeks; and "Random ID" number, along with each Settlement Collective Member's social security number, which will be used solely for purposes of preparing the issuance of the Notice Packet, locating individuals if a Settlement Check is returned as undeliverable, and for tax purposes ("Settlement Collective Member List").

24.     The Claims Administrator shall be required to execute a Confidentiality Agreement protecting Defendants' confidential data and information relating to Settlement Collective Members' personally identifiable information. The Claims Administrator shall execute and deliver to the Parties this Confidentiality Agreement within seven (7) Days after the date the Court enters the Approval Order, and within ten (10) Days thereafter, Defendants' Counsel shall provide the list referenced in Paragraph 23, above. A copy of the Parties' Confidentiality Agreement is attached hereto as **Exhibit D.**

25.     **Net Member Payments.**  The formula set forth below, for allocating the funds, shall calculate each Settlement Collective Member's Settlement Check and encompass the 50% portion of the Settlement Check treated as owed wages and the 50% portion of the Settlement Check treated as Liquidated Damages.

a.     **Net Wage Payments.** Up to 50% of the Net Member Payments will be eligible for distribution to the Settlement Collective Members as "Net Wage Payments." ("NWP"). The NWP shall consist of the 50% portion of the Settlement Collective Member's Settlement Check that is treated as owed wages.

b.     **Liquidated Damages Payments.**  In the aggregate, up to 50% of the Net Member Payments will be eligible for distribution to the Settlement Collective Members as Liquidated Damages. The Liquidated Damages payment will consist of 50% of each Settlement Collective Member's Settlement Check as an equal amount to the Net Member Payment pre-tax formula described in this Paragraph that will be treated as income through a Form 1099.

i.     The Service Award to the Named Plaintiff paid pursuant to Paragraph 22(a) shall be added and paid to the Named Plaintiff as part of her Liquidated Damages Payment.

ii.     The formula for allocating the Settlement Collective Member's pre-tax Net Wage and Liquidated Damages Payments shall be as follows:

1.     Each Settlement Collective Member shall receive a "Minimum Payment" of Fifty Dollars ($50) from the Net Member Payments in addition to any proportionate settlement share they are allocated as described in this Paragraph, for "Aggregate Minimum Payments" of approximately $9,550. The amount of the Net Member Payments remaining after the Aggregate Minimum Payments, Service Award, and employer-side payroll taxes is the "Net Member Payment Balance."

4905-1800-4490.3 / 117816-1008

**Error! Unknown document property name.**

Doc ID: 58029abb6ab20f7ec1065b774b229d4d27610802

2. As to the distribution of the Net Member Payment Balance, each Settlement Collective Member shall be assigned one (1) point for each Qualifying Workweek.

3. To calculate each Settlement Collective Member's proportionate share of the Net Member Payment Balance:

   a. Add all points for all Settlement Collective Members together to obtain the "Denominator".

   b. Divide the number of points for each Settlement Collective Member by the Denominator to obtain each Settlement Collective Member's "Portion of the Net Member Payment Balance".

   c. Multiply each Settlement Collective Member's Portion of the Net Member Payment Balance by the Net Member Payment Balance to determine each Settlement Collective Member's "Individual Share of the Net Member Payment Balance."

4. Each Settlement Collective Member's individual Net Member Payment shall be the total of the $50 Minimum Payment set forth in Paragraph 25(b)(ii)(1) above plus any Individual Share of the Net Member Payment Balance as described in Paragraph 25(b)(ii)(1).

26. **Failure to Cash Settlement Check**. If any Settlement Collective Member fails to cash his/her Settlement Check within the Acceptance Period of distribution, the uncashed checks and their unclaimed funds and property shall revert back to Defendants. The Claims Administrator shall return to Defendants any remaining funds from uncashed checks within thirty (30) Days of the close of the Acceptance Period. Any Settlement Collective Member who does not timely sign and cash a Settlement Check will not be bound by any release of claims.

27. **Payment Procedure**. Notice Packets, including the Settlement Checks, will be mailed, via First Class United States mail, postage prepaid, to the Settlement Collective Members by the Claims Administrator no later than thirty-five (35) Days after the Effective Date. Settlement Collective Members must cash their Settlement Checks within the Acceptance Period. When 45 days of the 90-day Acceptance Period have expired, the Claims Administrator will mail and email (to the extent an email address is available) a reminder to those Settlement Collective Members who have not yet cashed their checks to inform them of the 90-Day deadline in the form attached here to as **Exhibit B**.

28. The Notice Packet, attached hereto, in template format, as **Exhibit A**, to be sent to all Settlement Collective Members, will inform Settlement Collective Members of the right of each individual Settlement Collective Member's right to not sign or cash the Settlement Check. The individual Notice Packet will only identify the Settlement Check amount to the respective

4905-1800-4490.3 / 117816-1008
**Error! Unknown document property name.**

Doc ID: 58029abb6ab20f7ec1065b774b229d4d27610802

Settlement Collective Member receiving the Notice Packet. It will not identify the payments to other Settlement Collective Members or the Gross Settlement Amount. Any Settlement Collective Member who wishes to withdraw from the Settlement may either notify Class Collective Counsel or simply refuse to endorse and cash his/her Settlement Check. However, if a Settlement Collective Member cashes his/her Settlement Check, his/her notice of withdrawal shall be null and void. In the event of any dispute concerning whether a Settlement Collective Member has timely and properly withdrawn from the Settlement, Counsel for the Parties shall meet and confer in good faith to resolve such dispute.

29.     If an original Notice Packet is returned as undeliverable with a forwarding address provided by the United States Postal Service, the Claims Administrator will promptly resend a Notice Packet to that forwarding address. If an original Notice Packet is returned as undeliverable and without a forwarding address, the Claims Administrator will perform a skip trace, and if it obtains a more recent address, will resend a Notice Packet to the new address.

30.     **Tax Treatment of Settlement Checks.** One half of each Plaintiff's Settlement Check will be treated as payment in settlement of wage claims, and the other half as payment for liquidated damages. With respect to the payments treated as wage payments, the Claims Administrator will determine the proper tax withholding amounts in accordance with Plaintiffs' previously elected wage withholding instructions. The Claims Administrator will report the wage payments on IRS Forms W-2. The Claims Administrator is responsible for payment of the employer's share of payroll taxes as required by law. The Claims Administrator will report the liquidated damages payment on IRS Forms 1099. The Parties agree that Defendants are reserving the right to seek any necessary tax forms from the Plaintiffs should they be necessary to make these payments.

31.     **Determination and Payment of Employer Payroll Taxes.** No later than seven days after the Acceptance Period, the Claims Administrator shall determine the employer's share of payroll employment taxes on the Settlement Awards to be paid to Settlement Collective Members and shall communicate such amount to Defendants' Counsel with a detailed explanation of the calculations. No later than twenty-one (21) Days after receiving that amount from the Claims Administrator, Defendants shall deposit the employer's share of applicable payroll taxes into the QSF. In the event of any dispute as to the calculation of employer's share of payroll taxes, the Parties and Claims Administrator shall meet and confer in good faith in an attempt to resolve the dispute. If the dispute cannot be resolved, it shall be submitted to the Court for a final determination. The Claims Administrator shall thereafter remit and report the applicable portions of the payroll tax payment to the appropriate taxing authorities on a timely basis pursuant to its duties and undertakings. Defendants agree to reasonably cooperate with the Claims Administrator to the extent necessary to determine the amount of the payroll tax payment required under this Section.

32.     Class Collective Counsel and Defendants' Counsel do not intend for this Agreement to constitute legal advice relating to the tax liability of any Settlement Collective Member. To the extent that this Agreement or any of its attachments is interpreted to contain or constitute advice regarding any federal, state, or local tax issue, such advice is not intended or written to be used, and cannot be used, by any person for the purpose of avoiding any tax liability or penalties.

4905-1800-4490.3 / 117816-1008
**Error! Unknown document property name.**

Docusign Envelope ID: 24C8AAA5-E43D-4665-86AA-3D07D4294184

33.     **The Claims Administrator Shall Track Settlement Check Distribution.** The Claims Administrator shall send, on a bi-weekly basis, a tracking spreadsheet which informs counsel for the Parties of the following information: (1) when Settlement Checks have been mailed; (2) when Settlement Checks have been reissued because a Settlement Check was undeliverable; (3) whether a Settlement Check was undeliverable and had a forwarding address; (4) whether a Settlement Check was forwarded to a Settlement Collective Member's new address; (5) whether a Settlement Check was undeliverable and did not contain a forwarding address; (6) whether a Skip Trace has been performed; (7) whether the Skip Trace provided a new mailing address for a Settlement Collective Member; (8) whether the Settlement Check was mailed to the new Skip Traced address; (9) when Settlement Checks have been cashed; and (10) when the Service Award has been cashed.

34.     **Accounting for Settlement Checks.** The Claims Administrator shall send an accounting of all unclaimed funds as well as a list of the names of all Settlement Collective Members who choose not to cash or deposit their Settlement Checks to Class Collective Counsel and Defendants' Counsel  within thirty (30) calendar days after the close of the Acceptance Period. Any Settlement Collective Member who does not timely sign and cash a Settlement Check will not be bound by any federal or state law release of claims as described in this Agreement.

35.     All Settlement Checks will remain valid and negotiable for ninety (90) days from the date of their issuance and may thereafter automatically be canceled if not cashed within that time, at which time the right to recover any Settlement Check will be deemed void and of no further force and effect.

## ADDITIONAL OBLIGATIONS UNDER THE SETTLEMENT AGREEMENT

4905-1800-4490.3 / 117816-1008

**Error! Unknown document property name.**

Doc ID: 58029abb6ab20f7ec1065b774b229d4d27610802

Docusign Envelope ID: 24C8AAA5-E43D-4655-86A1-3D07D4294184

36.     **Class Collective Counsel Signatories**. Elander Woodall, Named Plaintiff, executes this Settlement on behalf of herself and in her representative capacity on behalf of the other Plaintiffs. It is agreed that it is burdensome to have all the Plaintiffs execute this Agreement. Further, the Notice previously advised the Plaintiffs that if they chose to join this Litigation: (a) they would be bound by the judgment, whether it was favorable or unfavorable; (b) the Court would make a final decision about whether they are entitled to recover, and for what time period, if any; and (c) the Named Plaintiff, Elander Woodall, through her attorneys, would represent their interests and that the attorneys for the collective would represent them in this case. In addition, the consents to join signed and filed by the Plaintiffs provide that they consent to becoming a plaintiff in the Litigation, consent to be represented by Class Collective Counsel, and consent to be bound by any settlement of this action or adjudication by the Court.

37.     **No Retaliation.** Defendants shall not retaliate or take any adverse action against any Settlement Collective Member on the grounds that he/she is eligible to participate or does participate in the Settlement or endorses his/her Settlement Check.

38.     **Defendant's Legal Fees.**  Defendants' legal fees and expenses in the Litigation shall be borne by Defendants.

39.     **Nullification of the Settlement Agreement.**  In the event: (a) the Court does not approve the Settlement as provided herein; or (b) the Settlement does not become final for any other reason; this Agreement shall be null and void and the Parties shall be returned to their respective statuses as of the date immediately prior to the execution of this Agreement. If this occurs, the Parties shall proceed in all respects as if the Agreement had not been executed.

40.     **Inadmissibility of Settlement Agreement.**  Except for purposes of settling the Litigation, neither this Agreement, nor its terms, nor any document, statement, proceeding, or conduct related to this Agreement, nor any reports or accounts thereof, shall be construed as, offered or admitted in evidence as, received as, or deemed to be evidence for any purpose adverse to the Parties, including, without limitation, evidence of a presumption, concession, indication or admission by any of the Parties of any liability, fault, wrongdoing, omission, concession or damage.

41.     **Amendment or Modification.**  This Agreement may be amended or modified only by a written instrument signed by counsel for all Parties or their successors in interest.

42.     **Entire Settlement Agreement.**  This Agreement constitutes the entire agreement among the Parties, and no oral or written representations, warranties, or inducements have been made to any party concerning this Agreement other than the representations, warranties, and covenants contained and memorialized in such documents. All prior or contemporaneous negotiations, memoranda, agreements, understandings, and representations, whether written or oral, are expressly superseded hereby and are of no further force and effect. Each of the Parties acknowledges that they have not relied on any promise, representation, or warranty, express or implied, not contained in this Agreement.

43.     **Authorization to Enter Into Settlement Agreement.**  Counsel for all Parties are expressly authorized by the Parties whom they represent to enter into this Agreement and to take

Page **15** of **17**

all appropriate action required or permitted to be taken by such Parties pursuant to this Agreement to effectuate its terms, and to execute any other documents required to effectuate the terms of this Agreement. The Parties and their counsel shall cooperate with each other and use their best efforts to effect the implementation of the Agreement.

44.   **Binding on Successors and Assigns.**   This Agreement shall be binding upon and inure to the benefit of Plaintiffs and Defendants and their heirs, beneficiaries, executors, administrators, successors, transferees, assigns, or any corporation or any entity with which any party may merge, consolidate, or reorganize.

45.   **Counterparts.**   This Agreement may be executed in one or more counterparts, including by facsimile or email. All executed counterparts and each of them shall be deemed to be one and the same instrument. A faxed or electronically transmitted signature shall bear the same force and effect as an original signature.

46.   **Governing Law.** This Agreement shall be subject to, governed by, construed, enforced, and administered in accordance with the laws of the State of Illinois, both in its procedural and substantive aspects, and shall be subject to the continuing exclusive jurisdiction of the Court. This Agreement shall be construed as a whole according to its fair meaning and intent, and not strictly for or against any party, regardless of who drafted or who was principally responsible for drafting this Agreement or any specific term or condition thereof.

47.   **Continuing Jurisdiction**. The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the Settlement contemplated thereby.

48.   **Cooperation and Drafting.**   The Parties have cooperated in the drafting and preparation of this Agreement; hence the drafting of this Agreement shall not be construed against any of the Parties. The Parties agree that the terms and conditions of this Agreement were negotiated at arms' length and in good faith by the Parties' counsel and reflect a settlement that was reached voluntarily based upon adequate information and after consultation with experienced legal counsel.

49.   **Confidentiality of Material Provided to the Claims Administrator.**   Any materials provided by Defendants to the Claims Administrator shall be kept confidential and used only for purposes of administering the Settlement. No later than thirty (30) days after the expiration of the Acceptance Period, the Claims Administrator shall either destroy or return to Defendants' counsel the original and all copies of any documents designated as "Confidential" that Defendants produced or provided to Class Collective Counsel during the Litigation.

IN WITNESS WHEREOF, the Parties and their Counsel have executed this Settlement Agreement and Release freely, knowingly, and after due consideration, as follows:

**DEFENDANTS:**

*Chandra Mitchell*
_____ Date: 24 March 2025 , 2025
Evergreen Packaging LLC and

Page **16** of 17

**Error! Unknown document property name.**

Pactiv Evergreen Inc.

**REPRESENTATIVE
PLAINTIFF:**

_____   Date: 02 / 11 / 2025 , 2025
Elander Woodall

4905-1800-4490.3 / 117816-1008
**Error! Unknown document property name.**

Doc ID: 58029abb6ab20f7ec1065b774b229d4d27610802

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **ELANDER WOODALL, Individually and on Behalf of All Others Similarly Situated,** | |
| Plaintiff, | |
| v. | Case No. 1:23-CV-459 |
| **EVERGREEN PACKAGING, LLC AND PACTIV EVERGREEN, INC.,** | Honorable Steven C. Seeger |
| Defendants. | |

# NOTICE OF SETTLEMENT

TO:  [Class Member Name]
       [Address]
       [Address]
       [Last Four Digits of Social Security No.]

*The Court authorized this Notice. This is not a solicitation.*
*This is not a lawsuit against you, and you are not being sued.*

**PLEASE READ THIS NOTICE CAREFULLY
AS YOU ARE ENTITLED TO MONEY AS A RESULT OF THIS SETTLEMENT.**

| 1. | Why Should I Read This Notice? |
|---|---|

You are receiving this Notice and the enclosed check because you have filed a signed "Consent to Join Collective Action" in the Lawsuit as an opt-in Plaintiff and agreed to have Plaintiff's counsel, Sanford Law Firm, PLLC, represent you in the Lawsuit. In addition, Defendants' records show that you worked for Evergreen Packaging LLC and/or Pactiv Evergreen Inc. as an Hourly Production Worker at their Athens, Georgia or Malvern, Arkansas facilities and performed work in one or more workweeks between January 25, 2021, and [DATE] and did not otherwise release your claims in the case entitled *Wallace v. Evergreen Packaging, LLC*, Case No. 4:22-cv-337-KGB, United States District Court for the Eastern District of Arkansas, making you an "Eligible Settlement Collective Member."

On January 25, 2023, Elander Woodall ("Plaintiff") commenced this lawsuit by filing a Complaint in the United States District Court for the Northern District of Illinois, Eastern Division, Case No. 1:23-cv-459 (the "Lawsuit"). In the Lawsuit, Plaintiff asserted violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") against Evergreen Packaging LLC and Pactiv

1

Evergreen Inc. ("Defendants") on behalf of herself, and she sought to bring her claims as a collective action on behalf of a class of allegedly similarly situated employees. Plaintiff alleges in the Lawsuit that Defendants violated the FLSA by engaging in a rounding practice whereby hours worked by employees allegedly were rounded down and went unrecorded and uncompensated. Defendants denied Plaintiff's claims and maintain that their employees were and are compensated correctly under federal wage and hour laws.

The parties reached an agreement to settle this Lawsuit for the purpose of avoiding further litigation with its attendant risk, expense, and inconvenience. There was no finding of liability against Defendants and Defendants do not admit any wrongdoing in settling the Lawsuit. No ruling on the merits of the claims in this Lawsuit has been made and no party has prevailed. The Court approved the Settlement Agreement and authorized that this Notice be sent to you.

**This Notice explains the terms of the Settlement and your right to your award under the Settlement.**

| 2. | What Are the Terms of the Settlement? |
|---|---|

Under the terms of the Settlement Agreement ("Settlement Agreement"), Defendants agreed to pay a total of Ninety Thousand Dollars ($90,000.00) to settle the claims asserted in the Lawsuit (the "Gross Settlement Amount"). Deductions from this amount have been made for (a) Plaintiff's Counsel's attorneys' fees and costs in the amount of $42,000.00; (b) a Service Award to Plaintiff; and (c) $[AMOUNT] to be paid for the Claims Administrator's reasonable fees and costs. After subtracting these amounts from the Gross Settlement Amount, the balance of the funds ("Net Member Payment Balance") will be apportioned among all Eligible Settlement Collective Members.

Your payment consists of a minimum settlement award of $[AMOUNT] ("Minimum Payment"). Additionally, all Eligible Settlement Collective Members will receive an additional *pro rata* payment based on the total number of workweeks they worked as an Hourly Production Worker ("Qualifying Workweeks"), at any time between January 25, 2021, and [DATE].

The formula for calculation of the *pro rata* payment is as follows:

    i.    Each Qualifying Workweek will be assigned one settlement share;

    ii.    The total number of settlement shares will be added together, and the resulting sum will be divided into the Net Member Payment Balance to reach a per-share dollar figure. That figure will then be multiplied by your individual number of settlement shares to determine the Individual Share of the Net Member Payment Balance that you will be entitled to receive.

An Individual Share of the Net Member Payment Balance calculated under this formula is in addition to the Minimum Payment. Qualifying Workweeks have been calculated for you based on records provided by Defendants. You do not need to do anything to be eligible to receive your Individual Share of the Net Member Payment Balance. As part of the Settlement, you will receive a check by mail with your Individual Share and Minimum Payment. Upon signing, cashing or

depositing the check, you will agree to release all wage and hour claims under federal or state law against Defendants that you have or may have for the period of January 25, 2021, to [DATE]. Please refer to Section 3 for additional details. If you choose not to sign, cash, and deposit this check, you will not release any of the claims set forth in Section 3 below.

If you want to learn more information about your total number of Qualifying Workweeks, you may contact the Claims Administrator. If you have any reason to dispute the total number of Qualifying Workweeks, you must provide the Claims Administrator with documentation to show different employment dates as an Hourly Production Worker and/or records of time worked by no later than [DEADLINE].

Fifty percent (50%) of your Settlement Award has been treated as back wages, to be reported on an IRS Form W-2, and the remaining 50% has been treated as non-wage penalties and liquidated damages, to be reported on an IRS Form 1099.

We cannot provide you with any tax advice, and you should contact your accountant or tax-related advisors for any questions about taxes you may owe on these amounts.

## 3.      What Claims Are Released by the Settlement?

Upon signing, depositing, or cashing the enclosed settlement check, you release all wage and hour claims under federal or state law you have or may have for the period of January 25, 2021 to [DATE] (the "Collective Period") that were brought or could have been brought in this Lawsuit against Defendants and their parents, subsidiaries, related entities, and affiliates (including their directors, officers, shareholders, owners, employees, attorneys, partners, and agents, past, present and future), and each of their respective predecessors, successors, transferees, and assigns ("Releasees"). Specifically, you, as an Eligible Settlement Collective Member, release, to the extent permitted by law, any and all wage and hour claims that were or could have been asserted based on the facts set forth in the Lawsuit, including but not limited to claims for alleged unpaid wages and overtime wages, liquidated or other damages, unpaid costs, penalties (including late payment penalties), premium pay, interest, attorneys' fees, litigation costs, restitution, or other compensation and relief for the failure to properly pay such amounts, arising under the FLSA or any other federal, state, or local wage-related law with respect to the time that you were employed by Defendants during the period of January 25, 2021 to [DATE]. The consideration of the payments made by Defendants and the terms described herein shall be in exchange for entry of the final judgment and dismissal with prejudice of the Lawsuit and the release of the Releasees and attorneys as set forth above.

**It is your decision whether to participate in the Settlement.** Importantly, since January 25, 2021, the statute of limitations has not run on any state-law wage claims you might have, which were brought in this Lawsuit against Defendants. This means that your rights to file a claim or collect potential damages was preserved. The statute of limitations on such claims will begin to run again on [DATE].

**If you are a current employee of Defendants, your employment will not be affected by cashing or depositing your Settlement Check.** The law prohibits retaliation against employees for exercising their rights under the FLSA. As such, Defendants will not discriminate or retaliate

against you in any way because of your decision to participate, or not participate, in the Lawsuit or this settlement.

| **4.** | **When Will I Receive My Settlement Check?** |

Enclosed is your Settlement Check. **Your Settlement Check will automatically expire on _____, \_\_\_\_\_. Please cash or deposit your check AS SOON AS POSSIBLE.**

| **5.** | **Who Are the Attorneys Representing Named Plaintiff And The Eligible Settlement Collective Members?** |

Named Plaintiff and the Eligible Settlement Collective Members are represented by the following attorney:

**Josh Sanford**
Sanford Law Firm, PLLC
Kirkpatrick Plaza, Suite 510
10800 Financial Centre Parkway
Little Rock, AR 72211
800-615-4946 (telephone)
501-221-0088 (telephone)
501-356-3095 (text)

| **6.** | **How Will the Attorneys for the Settlement Class Be Paid?** |

You do not have to pay the attorneys who have been appointed by the Court to represent the Eligible Settlement Collective Members. The Court approved the above-referenced amount for attorneys' fees and expenses, which came out of the Gross Settlement Amount.

| **7.** | **Who May I Contact If I Have Further Questions?** |

IF YOU NEED MORE INFORMATION OR HAVE ANY QUESTIONS, you may contact Plaintiff's Counsel at the telephone numbers listed above, or the Claims Administrator at the contact information below. Please refer to the "Evergreen Settlement."

RG2 Claims Administration LLC
[INSERT ADDRESS]
[INSERT TELEPHONE NUMBER]
[INSERT EMAIL]

This Notice only summarizes the Lawsuit, the Settlement Agreement, and related matters. For more information, you may inspect the Court files at the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, IL 60604. **PLEASE DO NOT TELEPHONE THE COURT FOR INFORMATION REGARDING THIS SETTLEMENT OR THE CLAIM PROCESS.**

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **ELANDER WOODALL, Individually and**<br>**on Behalf of All Others Similarly Situated,**<br>Plaintiff,<br>v.<br>**EVERGREEN PACKAGING, LLC AND**<br>**PACTIV EVERGREEN, INC.,**<br>Defendants. | Case No.  1:23-CV-459<br><br>Honorable Steven C. Seeger |

<u>**REMINDER: 45 DAYS UNTIL SETTLEMENT PAYMENT CHECK CASHING**</u>
<u>**DEADLINE**</u>

TO:     [Name]
        [Address]
        [Address]
        [Last Four Digits of Social Security No.]

We are writing on behalf of the Court-appointed Settlement Administrator in *Woodall, v. Evergreen Packaging, LLC, et al.*, Case No. 23-cv-459 (N.D. Ill.). We were appointed by the Court to administer the collective action settlement for Hourly Production Worker at their Athens, Georgia or Malvern, Arkansas facilities and performed work in one or more workweeks between January 25, 2021, and [DATE] and did not otherwise release your claims in the case entitled *Wallace v. Evergreen Packaging, LLC*, Case No. 4:22-cv-337-KGB, United States District Court for the Eastern District of Arkansas.

On DATE, we sent you a Settlement Check in the above-captioned case. Our records indicate that you have not yet cashed or deposited that check.

**This Reminder Notice is to inform you that your Settlement Check will automatically expire on _____, 2025. Thus, please cash or deposit your check AS SOON AS POSSIBLE**.

If you are unable to locate your Settlement Check, need a replacement check, or have other questions, please contact the Settlement Administrator by using the contact information below, or contact Plaintiffs' counsel, **Josh Sanford, Sanford Law Firm, PLLC Kirkpatrick Plaza, Suite 510 10800 Financial Centre Parkway Little Rock, AR 72211 800-615-4946 (telephone); 501-221-0088(telephone)**

RG2 Claims Administration, LLC
[INSERT ADDRESS]
[INSERT TELEPHONE NUMBER]
[INSERT EMAIL]

EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**ELANDER WOODALL, Individually and**                  **PLAINTIFF**
**on Behalf of All Others Similarly Situated**

vs.                 No. 1:23-cv-459

**EVERGREEN PACKAGING LLC,**                  **DEFENDANTS**
**and PACTIV EVERGREEN INC.**

## <u>ORIGINAL COMPLAINT—COLLECTIVE ACTION</u>

Plaintiff Elander Woodall ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorney Josh Sanford of Sanford Law Firm, PLLC, for her Original Complaint—Collective Action ("Complaint") against Defendants Evergreen Packaging LLC, and Pactiv Evergreen Inc. (collectively "Defendant" or "Defendants"), states and alleges as follows:

## I.     PRELIMINARY STATEMENTS

1.     This is a collective action brought by Plaintiff, individually and on behalf of all others similarly situated, against Defendants for violations of the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA").

2.     Plaintiff seeks a declaratory judgment, monetary damages, liquidated damages, prejudgment interest, and a reasonable attorney's fee and costs as a result of Defendants' policy and practice of failing to pay proper overtime compensation under the FLSA.

3.     Plaintiff filed a Consent to Join a lawsuit called *Wallace v. Evergreen Packaging, LLC,* Case No. 4:22-cv-337-KGB (E.D. Ark.) on August 31, 2022, and the

statute of limitations on her claim should be deemed tolled as of that date. Concurrently herewith, she has withdrawn her Consent in the *Wallace* case.

4.      Upon information and belief, within the three years prior to the filing of the Complaint, Defendants have willfully and intentionally committed violations of the FLSA as described, *infra*.

## II.     JURISDICTION AND VENUE

5.      The United States District Court for the Northern District of Illinois has subject matter jurisdiction over this suit under the provisions of 28 U.S.C. § 1331 because this suit raises federal questions under the FLSA.

6.      Venue lies properly within this Court under 28 U.S.C. § 1391(b)(1) and (c)(2), because the State of Illinois has personal jurisdiction over Defendants, and Defendants therefore "reside" in Illinois.

7.      Defendants are headquartered in Lake Forest; therefore, venue is proper within this District pursuant to 28 U.S.C. § 1391.

8.      Defendants do business in this District, and a substantial part of the events alleged herein occurred in this District.

9.      Upon information and belief, the payroll records and other documents related to the payroll practices that Plaintiff challenges are located in this District.

## III.     THE PARTIES

10.     Plaintiff is an individual and resident of Georgia.

11.     Separate Defendant Evergreen Packaging LLC ("Evergreen"), is a foreign limited liability company registered to do business in Illinois.

12.     Evergreen's registered address for service is Illinois Corporation Service Company at 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

13.     Evergreen maintains a website at https://evergreenpackaging.com/.

14.     Separate Defendant Pactiv Evergreen Inc. ("Pactiv"), is a foreign, for-profit corporation.

15.     Pactiv's registered address for service is Corporation Service Company at 251 Little Falls Drive, Wilmington, Delaware 19808.

16.     Pactiv maintains a website at https://pactivevergreen.com/.

## IV.     FACTUAL ALLEGATIONS

17.     Evergreen is an "employer" within the meaning set forth in the FLSA and was, at all times relevant to the allegations in this Complaint, Plaintiff's employer, as well as the employer of the members of the collective.

18.     Evergreen is a manufacturer of various beverage packaging, paper, and paperboard products. Evergreen is a part of Pactiv Evergreen Inc.[1]

19.     Evergreen operates multiple manufacturing facilities worldwide, including a facility in Georgia, and has a corporate headquarters located in Illinois that centralizes all pay, time and human resources policies so that they are the same across its facilities.

20.     Evergreen has employees engaged in commerce and has employees handling or otherwise working on goods or materials that have been moved in or produced for commerce by others, such as raw material used to manufacture beverage packaging, paper, and paperboard products.

---

[1]     *The Evergreen Packaging Story*, Evergreen Packaging, https://evergreenpackaging.com/about-us/ (last visited Sept. 7, 2022).

21.     Evergreen's annual gross volume of sales made or business done is not less than $500,000.00 (exclusive of excise taxes at the retail level that are separately stated) for each of the three years preceding the filing of this Complaint.

22.     Pactiv is an "employer" within the meaning set forth in the FLSA and was, at all times relevant to the allegations of this Complaint, Plaintiff's employer, as well as the employer of the members of the collective.

23.     Pactiv is a manufacturer and distributor of various food service, food merchandising, and beverage merchandising products.

24.     Pactiv operates multiple manufacturing and distribution facilities worldwide, including a manufacturing facility in Georgia, and has a corporate headquarters located in Illinois that centralizes all pay, time and human resources policies so that they are the same across its facilities.

25.     Pactiv's annual gross volume of sales made or business done is not less than $500,000.00 (exclusive of excise taxes at the retail level that are separately stated) for each of the three years preceding the filing of this Complaint.

26.     Evergreen and Pactiv jointly operate the manufacturing facilities at which Plaintiff and the collective members were employed.

27.     Defendants, together, have unified control over employees and jointly exercise authority over Plaintiff and other employees, set the pay policy applicable to Plaintiff and the others, and control the work schedule of Plaintiff and the others.

28.     Upon information and belief, the revenue generated from Evergreen and Pactiv was merged and managed in a unified manner.

29.     As a result of this unified operation, control and management, through shared employees and ownership with the authority to establish wages and wage policy, Defendants operated as a single enterprise.

30.     At all times material herein, Plaintiff has been entitled to the rights, protections, and benefits provided under the FLSA.

31.     Defendants employed Plaintiff as a production worker within the three years preceding the filing of this lawsuit.

32.     Plaintiff was employed by Defendants as an hourly-paid production worker from 2017 to approximately July of 2020.

33.     During the time period relevant to this case, Plaintiff was employed at Defendants' manufacturing facility in Athens, Georgia.

34.     Defendants classified Plaintiff as an hourly employee, nonexempt from the overtime requirements of the FLSA.

35.     Defendants also employed other production workers.

36.     Defendants also classified other production workers as hourly employees, nonexempt from the overtime requirements of the FLSA.

37.     Defendants directly hired Plaintiff and other production workers to work on its behalf, paid them wages and benefits, controlled their work schedules, duties, protocols, applications, assignments and employment conditions, and kept at least some records regarding their employment.

38.     Plaintiff and other production workers recorded their hours worked via an electronic timekeeping system, which logged their hours into an electronic payroll system maintained by Defendants.

39.     Upon information and belief, Defendants rounded hours worked by Plaintiff and other production workers' hours in Defendants' favor by rounding down in approximately fifteen-minute increments.

40.     For example, if a production worked clocked in for 8 hours and 10 minutes, Defendants would round that worker's hours down to exactly 8 hours.

41.     Defendants' rounding practice resulted in hours worked by production workers which went unrecorded and uncompensated.

42.     Because Plaintiff and other production workers regularly worked over forty hours in a week, the hours which went uncompensated due to Defendants' rounding practices created overtime violations.

43.     Because Plaintiff and other production workers worked hours which went uncompensated in weeks in which they also worked over forty hours, Defendants failed to pay Plaintiff and other production workers a lawful overtime premium for all hours worked over forty each week.

44.     Defendants knew or should have known that Plaintiff and other production workers were working additional hours for which they were not compensated.

45.     Upon information and belief, Defendants' clock-in and rounding policies were the same for all production workers.

46.     Upon information and belief, the pay practices that violate the FLSA alleged herein were the same at all of Defendants' facilities because they stem from a centralized human resources policy implemented uniformly from the corporate headquarters.

47.     At all relevant times herein, Defendants have deprived Plaintiff and other production workers of regular wages and proper overtime compensation for all of the hours worked over forty per week.

48.     Plaintiff worked over forty hours and therefore incurred damages in most weeks during her employment with Defendants.

49.     Specifically but without limitation, Plaintiff worked over forty hours and incurred damages in each of the following weeks: May 4, 2020; May 11, 2020; and May 18, 2020.

50.     The net effect of Defendants' rounding practices, as described above, is that Defendants intentionally rounded the hours of Plaintiff and other production workers in order to avoid paying them for all hours worked.

51.     Defendants made no reasonable efforts to ascertain and comply with applicable law.

52.     Defendants knew or showed reckless disregard for whether the way they paid Plaintiff and other production workers violated the FLSA.

## V.     REPRESENTATIVE ACTION ALLEGATIONS

53.     Plaintiff brings this claim for relief for violation of the FLSA as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of all persons who were, are, or will be employed by Defendants at any time within the applicable statute of limitations period, who are entitled to payment of the following types of damages:

A.     Overtime premiums for all hours worked in excess of forty in any week;

B.     Liquidated damages; and

C.     Attorneys' fees and costs.

54.     Plaintiffs propose the following collective under the FLSA:

**All hourly-paid production workers who recorded
at least 39 hours in any week within the last three years, except
those who join *Wallace v. Evergreen Packaging, LLC,* Case No. 4:22-cv-337-KGB
(E.D. Ark.).[2]**

55.     In conformity with the requirements of FLSA Section 16(b), Plaintiff has filed or will soon file written a Consent to Join this lawsuit.

56.     The relevant time period dates back three years from the date on which Plaintiff's Original Complaint—Collective Action was filed herein and continues forward through the date of judgment pursuant to 29 U.S.C. § 255(a), except as set forth herein below.

57.     The proposed FLSA collective members are similarly situated in that they share these traits:

A.     They were paid hourly;

B.     They were subject to Defendants' common policy of rounding their time in favor of Defendants;

C.     They worked over forty hours in at least one week;

D.     They were subject to Defendants' common policy of failing to pay proper overtime wages as required by the FLSA; and

E.     They had substantially similar job duties, requirements, and pay provisions.

58.     Plaintiff is unable to state the exact number of the collective but believes that the collective exceeds 100 persons.

---

[2]     A civil case is currently pending in the United States District Court for the Eastern District of Arkansas against Evergreen Packaging LLC, alleging violations of the FLSA on a collective basis, with collective allegations limited to production facilities in the state of Arkansas. *See Wallace v. Evergreen Packaging, LLC*, No. 4:22-cv-337-KGB (E.D. Ark. filed Apr. 12, 2022).

59.     Defendants can readily identify the members of the collective, who are a certain portion of the current and former employees of Defendants.

60.     The names and physical and mailing addresses of the FLSA collective action plaintiffs are available from Defendants, and a Court-approved Notice should be provided to the FLSA collective action plaintiffs via first class mail and email to their last known physical and electronic mailing addresses as soon as possible, together with other documents and information descriptive of Plaintiff's FLSA claim.

## VI.     FIRST CLAIM FOR RELIEF
### (Individual Claim for Violation of the FLSA)

61.     Plaintiff asserts this claim for damages and declaratory relief pursuant to the FLSA, 29 U.S.C. § 201, *et seq.*

62.     At all relevant times, Defendants have been, and continue to be, an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203.

63.     29 U.S.C. §§ 206 and 207 require any enterprise engaged in commerce to pay a minimum wage for all hours worked up to 40 in one week and to pay 1.5x their regular wages for all hours worked over 40, unless an employee meets certain exemption requirements of 29 U.S.C. § 213 and all accompanying DOL regulations.

64.     Defendants classified Plaintiff as nonexempt from the requirements of the FLSA.

65.     Despite Plaintiff's entitlement to overtime payments under the FLSA, Defendants failed to pay Plaintiff for all hours worked, including 1.5x her regular rate of pay for all hours worked in excess of 40 per week.

66.     Defendants knew or should have known that their actions violated the FLSA.

67.     Defendants' conduct and practices, as described above, were willful.

68.     By reason of the unlawful acts alleged herein, Defendants are liable to Plaintiff for monetary damages, liquidated damages and costs, including reasonable attorneys' fees provided by the FLSA for all violations which occurred beginning at least three years preceding the filing of Plaintiff's initial complaint, plus periods of equitable tolling.

69.     Defendants have not acted in good faith nor with reasonable grounds to believe their actions and omissions were not a violation of the FLSA, and, as a result thereof, Plaintiff is entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime premium pay described above pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b).

70.     Alternatively, should the Court find that Defendants acted in good faith in failing to pay Plaintiff as provided by the FLSA, Plaintiff is entitled to an award of prejudgment interest at the applicable legal rate.

## VII.    SECOND CLAIM FOR RELIEF
### (Collective Action Claim for Violation of the FLSA)

71.     Plaintiff asserts this claim for damages and declaratory relief on behalf of all similarly situated employees pursuant to the FLSA, 29 U.S.C. § 201, *et seq.*

72.     At all times relevant times to this Complaint, Defendants have been, and continue to be, an "employer" of Plaintiff and all those similarly situated within the meaning of the FLSA, 29 U.S.C. § 203.

73.     At all relevant times, Defendants have been, and continue to be, an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203.

74.     29 U.S.C. §§ 206 and 207 require any enterprise engaged in commerce to pay all employees a minimum wage for all hours worked up to 40 each week and to pay 1.5x their regular wages for all hours worked over 40, unless an employee meets certain exemption requirements of 29 U.S.C. § 213 and all accompanying DOL regulations.

75.     Defendants classified Plaintiff and other similarly situated employees as nonexempt from the overtime provisions of the FLSA.

76.     Despite the entitlement of Plaintiff and those similarly situated to overtime payments under the FLSA, Defendants failed to pay Plaintiff and all those similarly situated an overtime rate of 1.5x their regular rates of pay for all hours worked over 40 per week.

77.     Defendants deprived Plaintiff and similarly situated employees of compensation for all of the hours worked over forty per week, in violation of the FLSA.

78.     Defendants knew or should have known that their actions violated the FLSA.

79.     Defendants' conduct and practices, as described above, were willful.

80.     By reason of the unlawful acts alleged herein, Defendants are liable to Plaintiff and all similarly situated employees for monetary damages, liquidated damages and costs, including reasonable attorneys' fees provided by the FLSA for all violations which occurred beginning at least three years preceding the filing of Plaintiff's initial complaint, plus periods of equitable tolling.

81.     Defendants have not acted in good faith nor with reasonable grounds to believe their actions and omissions were not a violation of the FLSA, and, as a result thereof, Plaintiff and similarly situated employees are entitled to recover an award of

liquidated damages in an amount equal to the amount of unpaid overtime premium pay described above pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b).

82.    Alternatively, should the Court find that Defendants acted in good faith in failing to pay Plaintiff and the collective members as provided by the FLSA, they are entitled to an award of prejudgment interest at the applicable legal rate.

## VIII.    PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiff Elander Woodall, individually and on behalf of all others similarly situated, respectfully prays that each Defendant be summoned to appear and to answer this Complaint and for declaratory relief and damages as follows:

A.    Declaratory judgment that Defendants' practices alleged in this Complaint violate the FLSA and its related regulations;

B.    Certification of a collective under Section 216 of the FLSA of all individuals similarly situated, as further defined in any motion for the same;

C.    Judgment for damages suffered by Plaintiff and others similarly situated for all unpaid overtime wages under the FLSA and its related regulations;

D.    Judgment for liquidated damages owed to Plaintiff and all others similarly situated pursuant to the FLSA and its related regulations;

E.    An order directing Defendants to pay Plaintiff and all others similarly situated interest, a reasonable attorney's fee and all costs connected with this action; and

F.    Such other and further relief as this Court may deem just and proper.

Respectfully submitted,

**ELANDER WOODALL, Individually
and on Behalf of Others Similarly
Situated, PLAINTIFF**

SANFORD LAW FIRM, PLLC
Kirkpatrick Plaza
10800 Financial Centre Pkwy, Suite 510
Little Rock, Arkansas 72211
Telephone: (501) 221-0088
Facsimile: (888) 787-2040

*/s/ Josh Sanford*
Josh Sanford
Ark. Bar No. 2001037
josh@sanfordlawfirm.com

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**ELANDER WOODALL, Individually and**                                    **PLAINTIFF**
**on Behalf of All Others Similarly Situated**

vs.                                    No. 1:23-cv-459

**EVERGREEN PACKAGING LLC,**                                    **DEFENDANTS**
**and PACTIV EVERGREEN INC.**

<u>**CONSENT TO JOIN COLLECTIVE ACTION**</u>

      I was employed as an hourly-paid production worker for Evergreen Packaging LLC, and Pactiv Evergreen Inc. within the past three years. I understand this lawsuit is being brought under the Fair Labor Standards Act for <u>unpaid wages</u>. I consent to becoming a party-plaintiff in this lawsuit, to be represented by Sanford Law Firm, PLLC, and to be bound by any settlement of this action or adjudication by the Court.

_____
**ELANDER WOODALL**
January 25, 2023

**Josh Sanford, Esq.**
**SANFORD LAW FIRM, PLLC**
**Kirkpatrick Plaza**
**10800 Financial Centre Parkway, Suite 510**
**Little Rock, Arkansas 72211**
**Telephone: (501) 221-0088**
**Facsimile: (888) 787-2040**
**josh@sanfordlawfirm.com**

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ELANDER WOODALL, Individually and on Behalf of All Others Similarly Situated<br><br>Plaintiff,<br><br>v.<br><br>EVERGREEN PACKAGING, LLC AND PACTIV EVERGREEN, INC.,<br><br>Defendants. | Case No. 1:23-CV-459<br><br>Honorable Steven C. Seeger |

## AGREED CONFIDENTIALITY ORDER AND FRE 502 (D) AND (E) CLAWBACK ORDER

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, Defendants Evergreen Packaging LLC and Pactiv Evergreen Inc. (hereinafter "Defendants"), by and through its attorneys, and Plaintiff Elander Woodall ("Plaintiff"), by and through her attorneys, hereby agree that it is necessary to have an Agreed Confidentiality Order to preserve the confidentiality of certain documents, information, and testimony to be produced and/or given by the parties and/or witnesses. The parties find that certain documents, information, and testimony in this litigation should be kept confidential in order to protect the parties' legitimate business interests, the privacy rights of the parties and the parties' current and former employees. Since the public disclosure of such information and documents might cause private and confidential information to be disclosed to the detriment the parties, the parties find that "good cause" – pursuant to Fed. R. Civ. P. 26(c) – exists and request that the following Order be entered:

The parties to this Agreed Confidentiality Order have agreed to the terms of this Order; accordingly, it is ORDERED:

1.      **Scope**. All materials produced or adduced in the course of discovery, including

initial disclosures, responses to discovery requests, deposition testimony and exhibits, and information derived directly therefrom (hereinafter collectively "documents"), shall be subject to this Order concerning Confidential Information as defined below.  This Order is subject to the Local Rules of this District and the Federal Rules of Civil Procedure on matters of procedure and calculation of time periods.

2.     **Confidential Information**.  As used in this Order, "Confidential Information" means information designated as "CONFIDENTIAL" or "CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER" by the producing party that falls within one or more of the following categories: (a) information prohibited from disclosure by statute; (b) confidential, proprietary, financial, or trade secret information; (c) research, technical, commercial or financial information that the party has maintained as confidential; (d) medical information concerning any individual; (e) personal identity information; (f) income tax returns (including attached schedules and forms), W-2 forms and 1099 forms; (g) relevant records of a person who is not a party to the case.  Information or documents that are available to the public may not be designated as Confidential Information.

3.     **Designation**.

(a)     A party may designate a document as Confidential Information for protection under this Order by marking it "CONFIDENTIAL" or "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" on the document and on all copies in a manner that will not interfere with the legibility of the document.  As used in this Order, "copies" includes electronic images, duplicates, extracts, summaries or descriptions that contain the Confidential Information.  The marking "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" shall be applied prior to or at the time of the documents are produced or disclosed.  Applying the

marking of "CONFIDENTIAL" or "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" to a document does not mean that the document has any status or protection by statute or otherwise except to the extent and for the purposes of this Order. For multi-page documents, each page thereof must be marked "CONFIDENTIAL" or "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER". The failure to stamp documents "CONFIDENTIAL" or "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" prior to disclosure as a result of mistake or oversight may be cured in accordance with Paragraph 6 of this Order. Documents produced electronically may also be designated as Confidential by marking the compact disc or other computer media with the notation "CONFIDENTIAL" or "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER. Any copies that are made of any documents marked "CONFIDENTIAL" or "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" shall also be so marked, except that indices, electronic databases or lists of documents that do not contain substantial portions or images of the text of marked documents and do not otherwise disclose the substance of the Confidential Information are not required to be marked.

(b)     The designation of a document as Confidential Information is a certification by an attorney or a party appearing *pro se* that the document contains Confidential Information as defined in this order.

(c)     Either party may redact the following information from any document before producing the document: (a) social security numbers; (b) bank account numbers; (c) credit card numbers; (d) driver's license numbers; (e) passwords and passcodes; (f) unlisted addresses and telephone numbers; (g) marital status; and (h) criminal convictions. If a redaction prevents or hinders the receiving party from identifying the person(s) that the document refers to, then that person shall be identified by name or in any consistent manner across documents (e.g.,

"employee 1").

    **4.**    **Depositions**.

    **Alternative A.**  Deposition testimony is protected by this Order only if designated as "CONFIDENTIAL" or "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" on the record at the time the testimony is taken.  Such designation shall be specific as to the portions that contain Confidential Information.  Deposition testimony so designated shall be treated as Confidential Information protected by this Order until fourteen days after delivery of the transcript by the court reporter to any party or the witness.  Within fourteen days after delivery of the transcript, a designating party may serve a Notice of Designation to all parties of record identifying the specific portions of the transcript that are designated Confidential Information, and thereafter those portions identified in the Notice of Designation shall be protected under the terms of this Order.  The failure to serve a timely Notice of Designation waives any designation of deposition testimony as Confidential Information that was made on the record of the deposition, unless otherwise ordered by the Court.

    **5.**    **Protection of Confidential Material**.

    **(a)**    **General Protections**.  Confidential Information shall not be used or disclosed by the parties, counsel for the parties or any other persons identified in subparagraph (b) for any purpose whatsoever other than in this litigation, including any appeal thereof.

    **(b)**    **Limited Third-Party Disclosures**.  The parties and counsel for the parties shall not disclose or permit the disclosure of any Confidential Information to any third person or entity except as set forth in subparagraphs (1)-(9).  Subject to these requirements, the following categories of persons may be allowed to review Confidential Information:

            **(1)**    **Counsel**.  Counsel for the parties and employees of counsel who have responsibility for the action;

-4-

**(2)**     **Parties**.  Individual parties and employees of a party but only to the extent counsel determines in good faith that the employee's assistance is reasonably necessary to the conduct of the litigation in which the information is disclosed;

**(3)**     **The Court and its personnel**;

**(4)**     **Court Reporters and Recorders**.  Court reporters and recorders engaged for depositions;

**(5)**     **Contractors**.  Those persons specifically engaged for the limited purpose of making copies of documents or organizing or processing documents, including outside vendors hired to process electronically stored documents;

**(6)**     **Consultants and Experts**.  Consultants, investigators, or experts employed by the parties or counsel for the parties to assist in the preparation and trial of this action but only after such persons have completed the certification contained in Attachment A, Acknowledgment of Understanding and Agreement to Be Bound;

**(7)**     **Witnesses at depositions**.  During their depositions, witnesses in this action to whom disclosure is reasonably necessary.  Witnesses shall not retain a copy of documents containing Confidential Information, except witnesses may receive a copy of all exhibits marked at their depositions in connection with review of the transcripts.  Pages of transcribed deposition testimony or exhibits to depositions that are designated as Confidential Information pursuant to the process set out in this Order must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Order.

**(8)**     **Author or recipient**.  The author or recipient of the document (not including a person who received the document in the course of litigation); and

**(9)**     **Others by Consent**.  Other persons only by written consent of the producing party or upon order of the Court and on such conditions as may be agreed or ordered.

(c)     Control of Documents. Counsel for the parties shall make reasonable efforts to prevent unauthorized or inadvertent disclosure of Confidential Information.  Counsel shall maintain the originals of the forms signed by persons acknowledging their obligations under this Order for a period of three years after the termination of the case.

6. **Inadvertent Failure to Designate.** An inadvertent failure to designate a document as Confidential Information does not, standing alone, waive the right to so designate the document. Any failure to designate information as "CONFIDENTIAL" OR "CONFIDENTIAL – SUBJECT TO A PROTECTIVE ORDER" that was the result of mistake or oversight may be cured after the date of production by providing notice to the opposing party within a reasonable time after discovering the mistake or oversight and, to the extent reasonably possible, all others bound by the terms of this Order. Upon receipt of such notice, such individuals shall immediately take action to maintain and restrict the use of such information in accordance with the terms of this Order. No party shall be found to have violated this Order for failing to maintain the confidentiality of material during a time when that material has not been designated Confidential Information, even where the failure to so designate was inadvertent and where the material is subsequently designated Confidential Information.

7. **Filing of Confidential Information.** This Order does not, by itself, authorize the filing of any document under seal. Any party wishing to file a document designated as Confidential Information in connection with a motion, brief or other submission to the Court must comply with L.R. 26.2.

8. **No Greater Protection of Specific Documents**. Except on privilege grounds not addressed by this Order, no party may withhold information from discovery on the ground that it requires protection greater than that afforded by this Order unless the party moves for an order providing such special protection.

9. **Challenges by a Party to Designation as Confidential Information**.

The designation of any material or document as Confidential Information is subject to challenge by any party. The following procedure shall apply to any such challenge.

      **(a)**    **Meet and Confer**.  A party challenging the designation of Confidential Information must do so in good faith and must begin the process by conferring directly with counsel for the designating party.  In conferring, the challenging party must explain the basis for its belief that the confidentiality designation was not proper and must give the designating party an opportunity to review the designated material, to reconsider the designation, and, if no change in designation is offered, to explain the basis for the designation.  The designating party must respond to the challenge within ten (10) business days.

      **(b)**    **Judicial Intervention**.  A party that elects to challenge a confidentiality designation may file and serve a motion that identifies the challenged material and sets forth in detail the basis for the challenge.  Each such motion must be accompanied by a competent declaration that affirms that the movant has complied with the meet and confer requirements of this procedure.  The burden of persuasion in any such challenge proceeding shall be on the designating party.  Until the Court rules on the challenge, all parties shall continue to treat the materials as Confidential Information under the terms of this Order.

    **10.**    **Action by the Court**.  Applications to the Court for an order relating to materials or documents designated Confidential Information shall be by motion.  Nothing in this Order or any action or agreement of a party under this Order limits the Court's power to make orders concerning the disclosure of documents produced in discovery or at trial.

    **11.**    **Use of Confidential Documents or Information at Trial**.  Nothing in this Order shall be construed to affect the use of any document, material, or information at any trial or hearing.  A party that intends to present or that anticipates that another party may present Confidential information at a hearing or trial shall bring that issue to the Court's and parties' attention by motion or in a pretrial memorandum without disclosing the Confidential

Information.  The Court may thereafter make such orders as are necessary to govern the use of such documents or information at trial.

**12.     Confidential Information Subpoenaed or Ordered Produced in Other Litigation**.

(a)     If a receiving party is served with a subpoena or an order issued in other litigation that would compel disclosure of any material or document designated in this action as Confidential Information, the receiving party must so notify the designating party, in writing, immediately and in no event more than three court days after receiving the subpoena or order. Such notification must include a copy of the subpoena or court order.

(b)     The receiving party also must immediately inform in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is the subject of this Order.  In addition, the receiving party must deliver a copy of this Order promptly to the party in the other action that caused the subpoena to issue.

(c)     The purpose of imposing these duties is to alert the interested persons to the existence of this Order and to afford the designating party in this case an opportunity to try to protect its Confidential Information in the court from which the subpoena or order issued.  The designating party shall bear the burden and the expense of seeking protection in that court of its Confidential Information, and nothing in these provisions should be construed as authorizing or encouraging a receiving party in this action to disobey a lawful directive from another court. The obligations set forth in this paragraph remain in effect while the party has in its possession, custody or control Confidential Information by the other party to this case.

**13.     Challenges by Members of the Public to Sealing Orders**.  A party or interested

member of the public has a right to challenge the sealing of particular documents that have been filed under seal, and the party asserting confidentiality will have the burden of demonstrating the propriety of filing under seal.

**14. Obligations on Conclusion of Litigation**.

      **(a) Order Continues in Force**. Unless otherwise agreed or ordered, this Order shall remain in force after dismissal or entry of final judgment not subject to further appeal.

      **(b) Obligations at Conclusion of Litigation**. Within sixty-three days after dismissal or entry of final judgment not subject to further appeal, all Confidential Information and documents marked "CONFIDENTIAL" or "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" under this Order, including copies as defined in ¶ 3(a), shall be returned to the producing party unless: (1) the document has been offered into evidence or filed without restriction as to disclosure; (2) the parties agree to destruction to the extent practicable in lieu of return; or (3) as to documents bearing the notations, summations, or other mental impressions of the receiving party, that party elects to destroy the documents and certifies to the producing party that it has done so.

      **(c) Retention of Work Product and one set of Filed Documents**.

Notwithstanding the above requirements to return or destroy documents, counsel may retain (1) attorney work product, including an index that refers or relates to designated Confidential Information so long as that work product does not duplicate verbatim substantial portions of Confidential Information, and (2) one complete set of all documents filed with the Court including those filed under seal. Any retained Confidential Information shall continue to be protected under this Order. An attorney may use his or her work product in subsequent

litigation, provided that its use does not disclose or use Confidential Information.

(d)     **Deletion of Documents filed under Seal from Electronic Case Filing (ECF) System**.  Filings under seal shall be deleted from the ECF system only upon order of the Court.

15.     **Order Subject to Modification**.  This Order shall be subject to modification by the Court on its own initiative or on motion of a party or any other person with standing concerning the subject matter.

16.     **No Prior Judicial Determination**.  This Order is entered based on the representations and agreements of the parties and for the purpose of facilitating discovery. Nothing herein shall be construed or presented as a judicial determination that any document or material designated Confidential Information by counsel or the parties is entitled to protection under Rule 26(c) of the Federal Rules of Civil Procedure or otherwise until such time as the Court may rule on a specific document or issue.

17.     **Persons Bound**.  This Order shall take effect when entered and shall be binding upon all counsel of record and their law firms, the parties, and persons made subject to this Order by its terms.

18.     **FRE 502(d) and (e) Clawback**:  Pursuant to FRE 502(d) and (e), the parties agree to and the Court orders protection of privileged and otherwise protected Documents against claims of waiver (including as against third parties and in other federal and state proceedings) as follows:

(a)     The disclosure or production of Documents by a Producing Party subject to a legally recognized claim of privilege, including without limitation the attorney-client privilege and the work-product doctrine, to a Receiving Party, shall in no way constitute the voluntary disclosure of such Document.

(b)     The inadvertent disclosure or production of any Document in this action shall not result in the waiver of any privilege, evidentiary protection or other protection associated with such Document as to the Receiving Party or any third parties, and shall not result in any waiver, including subject matter waiver, of any kind.

(c)     If, during the course of this litigation, a party determines that any Document produced by another party is or may reasonably be subject to a legally recognizable privilege or evidentiary protection ("Protected Document"):

(i)     the Receiving Party shall: (A) refrain from reading the Protected Document any more closely than is necessary to ascertain that it is privileged or otherwise protected from disclosure; (B) immediately notify the Producing Party in writing that it has discovered Documents believed to be privileged or protected; (C) specifically identify the Protected Documents by Bates number range or hash value, and, (D) within ten (10) days of discovery by the Receiving Party, return, sequester, or destroy all copies of such Protected Documents, along with any notes, abstracts or compilations of the content thereof. To the extent that a Protected Document has been loaded into a litigation review database under the control of the Receiving Party, the Receiving Party shall have all electronic copies of the Protected Document extracted from the database. Where such Protected Documents cannot be destroyed or separated, they shall not be reviewed, disclosed, or otherwise used by the Receiving Party. Notwithstanding, the Receiving Party is under no obligation to search or review the Producing Party's Documents to identify potentially privileged or work product Protected Documents.

(ii)    If the Producing Party intends to assert a claim of privilege or other protection over Documents identified by the Receiving Party as

-11-

Protected Documents, the Producing Party will, within ten (10) days of receiving the Receiving Party's written notification described above, inform the Receiving Party of such intention in writing and shall provide the Receiving Party with a log for such Protected Documents that is consistent with the requirements of the Federal Rules of Civil Procedure, setting forth the basis for the claim of privilege or other protection. In the event that any portion of a Protected Document does not contain privileged or protected information, the Producing Party shall also provide to the Receiving Party a redacted copy of the document that omits the information that the Producing Party believes is subject to a claim of privilege or other protection.

(d)     If, during the course of this litigation, a party determines it has produced a Protected Document:

(i)     The Producing Party may notify the Receiving Party of such inadvertent production in writing and demand the return of such documents. Such notice shall be in writing; however, it may be delivered orally on the record at a deposition, promptly followed up in writing. The Producing Party's written notice will identify the Protected Document inadvertently produced by bates number range or hash value, the privilege or protection claimed, and the basis for the assertion of the privilege and shall provide the Receiving Party with a log for such Protected Documents that is consistent with the requirements of the Federal Rules of Civil Procedure, setting forth the basis for the claim of privilege or other protection. In the event that any portion of the Protected Document does not contain privileged or protected information, the Producing Party shall also provide to the Receiving Party a redacted copy of the Document that omits the

information that the Producing Party believes is subject to a claim of privilege or other protection.

(ii)    The Receiving Party must, within ten (10) days of receiving the Producing Party's written notification described above, return, sequester, or destroy the Protected Document and any copies, along with any notes, abstracts or compilations of the content thereof. To the extent that a Protected Document has been loaded into a litigation review database under the control of the Receiving Party, the Receiving Party shall have all electronic copies of the Protected Document extracted from the database.

(e)    To the extent that the information contained in a Protected Document has already been used in or described in other documents generated or maintained by the Receiving Party prior to the date of receipt of written notice by the Producing Party as set forth in paragraphs (c)(ii) and d(i), then the Receiving Party shall sequester such documents until the claim has been resolved. If the Receiving Party disclosed the Protected Document before being notified of its inadvertent production, it must take reasonable steps to retrieve it.

(f)    The Receiving Party's return, sequestering or destruction of Protected Documents as provided herein will not act as a waiver of the Receiving Party's right to move for the production of the returned, sequestered or destroyed documents on the grounds that the documents are not, in fact, subject to a viable claim of privilege or protection. However, the Receiving Party is prohibited and estopped from arguing that:

(i)    the disclosure or production of the Protected Documents acts as a waiver of an applicable privilege or evidentiary protection; or

(ii)    the Producing Party did not take reasonable steps to prevent the disclosure of the Protected Documents.

(g)     Either party may petition the Court to submit Protected Documents to the Court under seal for a determination of the claim of privilege or other protection. The Producing Party shall preserve the Protected Documents until such claim is resolved. The Receiving Party may not use the Protected Documents for any purpose absent this Court's Order.

(h)     Upon a determination by the Court that the Protected Documents are protected by the applicable privilege or evidentiary protection, and if the Protected Documents have been sequestered rather than returned or destroyed by the Receiving Party, the Protected Documents shall be returned or destroyed within 10 (ten) days of the Court's order. The Court may also order the identification by the Receiving Party of Protected Documents by search terms or other means.

(i)     Nothing contained herein is intended to, or shall serve to limit a party's right to conduct a review of documents, data (including electronically stored information) and other information, including without limitation, metadata, for relevance, responsiveness and/or the segregation of privileged and/or protected information before such information is produced to another party.

(j)     By operation of the parties' agreement and Court Order, the parties are specifically afforded the protections of FRE 502 (d) and (e).

*So Ordered.*

Dated: <u>November 6, 2024</u>

                                                    Steven C. Seeger
                                                    U.S. District Judge

ATTACHMENT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **ELANDER WOODALL, Individually and on Behalf of All Others Similarly Situated** | |
| Plaintiff, | |
| v. | Case No. 1:23-CV-459 |
| **EVERGREEN PACKAGING, LLC AND PACTIV EVERGREEN, INC.,** | Honorable Steven C. Seeger |
| Defendants. | |

**ACKNOWLEDGMENT AND**
**AGREEMENT TO BE BOUND**

The undersigned hereby acknowledges that he/she has read the Confidentiality Order dated November 6, 2024 in the above-captioned action and attached hereto, understands the terms thereof, and agrees to be bound by its terms. The undersigned submits to the jurisdiction of the United States District Court for the Northern District of Illinois in matters relating to the Confidentiality Order and understands that the terms of the Confidentiality Order obligate him/her to use materials designated as Confidential Information in accordance with the Order solely for the purposes of the above-captioned action, and not to disclose any such Confidential Information to any other person, firm or concern.

The undersigned acknowledges that violation of the Confidentiality Order may result in penalties for contempt of court.

Name: _____

Job Title: _____

Employer: _____

Business Address: _____

_____

_____

Date: _____                     _____
                                                              Signature